JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Marie C. Macfarlane ("Wife"), appeals from the judgment of the Common Pleas Court, Domestic Relations Division, that granted William N. Macfarlane ("Husband") a divorce from Wife, divided the couple's marital property, ordered spousal and child support, and designated Husband as residential parent and legal custodian of the couple's four children. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that the Macfarlanes were married on December 8, 1990 and have four children: Jude Thaddeus II, age 13; William Nobel III, age 10; Xavier Aquines, age 7, and Cleutus Escriva, age 4.
 {¶ 3} Shortly after their marriage, Husband and Wife started the Mary Foundation, a nonprofit religious organization which distributes audio tapes, books and literature regarding Catholic parenting, Catholic beliefs and the Catholic church. As the trial court stated in its judgment entry of divorce, "both Mr. and Mrs. Macfarlane are very devoted to their religion, which is a very important and central part of their lives."
 {¶ 4} As part of their religious beliefs and desire to have control over the education of their children, Husband and Wife agreed that their children would be home schooled. Husband testified that he thought it would only be for their early school years and that eventually they would be put in a traditional school setting; Wife, however, wanted the boys home schooled until adolescence or high school.
 {¶ 5} Sometime in 1998/1999, Husband befriended Al Langsenkamp, a businessman from Indianapolis. As a result of this friendship and research prompted by his discussions with Mr. Langsenkamp, Husband became convinced that, as a result of the looming Y2K problem, society would be in great risk come January 1, 2000. Husband decided (with Wife's agreement) that it was important to move to a rural area so that in the event society and its infrastructures broke down, he and his family could live in a secure environment. The Macfarlanes purchased property in New Hampshire and moved there. Husband moved the work of the Mary Foundation to New Hampshire, although this required that he periodically return to Cleveland. Wife continued to home school the children in New Hampshire.
 {¶ 6} Husband testified that sometime in 2000, he started talking to Wife about enrolling the children in a traditional school. He also discussed moving to Canada, where he had made friends with a group of like-minded Catholics who had started their own school for about eight families. From the outset of these discussions, Wife was adamant that she did not want the children in a traditional school. This disagreement became a source of constant tension in the marriage.
 {¶ 7} In June 2003, the Macfarlanes moved back to Cleveland. The marriage was crumbling and on July 17, 2003, after a particularly contentious argument, Husband vacated the marital home.
 {¶ 8} On August 12, 2003, both Husband and Wife filed complaints for legal separation. Because service was obtained first in Husband's case, Wife's case (DR-294322) was consolidated with this case. Wife subsequently dismissed her action for legal separation, as well as the counterclaim for legal separation that she had filed with her answer to Husband's complaint. Husband subsequently amended his complaint to seek a divorce.
 {¶ 9} On September 8, 2003, with the agreement of the parties, the court appointed John J. Ready as guardian ad litem and counsel on behalf of the minor children. In addition, the parties agreed that Wife would continue to home school the children until further investigation and evaluation were made regarding the best interests of the children.
 {¶ 10} Subsequently, in October 2003, Husband and Wife agreed to the appointment of Dr. Debbie Koricke as an independent court psychologist to evaluate the allocation of parental rights and responsibilities and to make a recommendation regarding the continued home schooling of the parties' children.
 {¶ 11} At a pretrial on January 30, 2004, Husband and Wife entered into an agreed judgment entry to list their property in New Hampshire for sale, and to the recommendation of Dr. Koricke to enroll their two older children in Holy Trinity School for the school year commencing August 2004. Wife subsequently refused to sign the listing agreement for the real estate agent to sell the property; she finally signed the agreement in June 2004, but only after the court threatened to hold her in contempt of court for refusing to do so.
 {¶ 12} On June 11, 2004, after Wife's third lawyer filed a notice of appearance,[1] Wife filed a motion asking the court to transfer jurisdiction of the case to an unspecified "Catholic tribunal." On August 23, 2004, Wife filed another motion requesting that the court vacate its prior orders and transfer jurisdiction of the matter to the Diocesan Tribunal of the Cleveland Catholic Diocese for resolution by arbitration. The trial court subsequently denied Wife's motions. On February 17, 2005, Wife filed another motion requesting that the court "recognize the alternative jurisdiction of the Catholic Church to arbitrate the dispute in this matter" and, accordingly, refer the matter to arbitration before a religious tribunal. The court once again denied Wife's motion.
 {¶ 13} In the meantime, Husband filed an emergency motion seeking a reallocation of parental rights and responsibilities and an order giving him possession of the children; in support of his motion, he argued that his Wife had refused to enroll the two older children in Holy Trinity School in violation of the earlier agreed judgment entry and court order. Following the hearing, the court granted possession and custody of the children to Husband during the pendency of the action in order to facilitate the enrollment of the children at Holy Trinity School. Although the original agreement provided that only the two older children would attend Holy Trinity, because Husband was not equipped for home schooling, the court permitted Husband to enroll the three older children at Holy Trinity and enroll the youngest child in day care.
 {¶ 14} Trial commenced in May 2005. At the conclusion of trial, in an extensive journal entry with findings of fact and conclusions of law, the trial court granted Husband a divorce, ordered that Husband be the residential parent and legal custodian of the children, divided the parties' limited assets, ordered that Wife pay Husband $50 per month in child support through December 31, 2006, and ordered that Husband pay Wife $1,000 per month spousal support through December 31, 2006. Wife now appeals from that order.
 {¶ 15} Initially, we note that the standard of review for determinations made in divorce cases is abuse of discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 ARBITRATION BY A CHURCH TRIBUNAL {¶ 16} In her first assignment of error, Wife argues that "the trial court erred as a matter of law when it refused to allow a determination by alternative dispute mechanisms." Succinctly, Wife argues that she and Husband were married in the Catholic Church, and both agreed to be bound by Catholic canon law regarding their marriage and any issues regarding their children. Accordingly, she contends, the trial court should have ceded its jurisdiction to a canonical court for resolution of all issues regarding the parties' divorce. Wife's argument is without merit.
 {¶ 17} First, the Supreme Court of Ohio has definitively established that child custody disputes are not subject to arbitration. Kelm v. Kelm (2001), 92 Ohio St.3d 223 ("KelmII"), at the syllabus. Although consensual, contractual arbitration is allowed to resolve disputes as to temporary or permanent spousal or child support in domestic relations matters, Kelm v. Kelm (1993), 68 Ohio St.3d 26 ("Kelm I"), inKelm II, the Supreme Court unequivocally stated that "in a domestic relations case, matters of child custody and parental visitation are not subject to arbitration. The authority to resolve disputes over custody and visitation rests exclusively with the courts." Id. at 228. Thus, contrary to Wife's argument, child custody issues are not subject to arbitration agreements.
 {¶ 18} Furthermore, Wife offered no evidence of a written agreement between Husband and Wife to arbitrate issues arising out of their marriage. Although Wife contends that "the words chosen by them and spoken at the [wedding] ceremony itself that they would abide by the Church teachings, doctrines and canon laws regarding marriage and the family, divorce and separation" somehow created an oral antenuptial agreement to arbitrate disputes regarding their marriage, any such oral agreement is barred by the Statute of Frauds, as set forth in R.C. 1335.05, which states that agreements "made upon consideration of marriage" must be in writing to be enforceable. Any claimed agreement resulting from the Catholic marriage ceremony was "made upon consideration of marriage" and, therefore, must be in writing to be enforceable. Henry v. Henry (1875),27 Ohio St. 121. Wife offered no evidence of any written agreement to arbitrate, however.
 {¶ 19} Moreover, even assuming, for the sake of argument, that the parties did enter into an agreement to arbitrate their marital discord and property and debt issues, Wife waived her right to pursue arbitration.
 {¶ 20} It is well settled that a party may waive any of her contractual rights, including the right to arbitration. Thorntonv. Haggins, Cuyahoga App. No. 83055, 2003-Ohio-7078; Hogan v.Cincinnati Fin. Corp., Trumbull App. No. 2003-T-0034,2004-Ohio-3331. "`The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate.'" Thornton,
supra, quoting Harsco Corp. v. Crane Carrier Co. (1997),122 Ohio App.3d 406. "To determine whether a defendant acted inconsistently with arbitration, the court should consider: (1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts." Id.; see, also, Hausser Taylor v.Accelerated Systems Integration, Inc., Cuyahoga App. No. 84748,2005-Ohio-1017, at ¶ 20.
 {¶ 21} Here, Wife herself invoked the jurisdiction of the court when she filed her complaint for legal separation. In addition, she filed a counterclaim for legal separation to Husband's complaint. As the trial court stated in its order denying Wife's motion to refer the matter to a canonical tribunal, "having sought the jurisdiction of the court, [Wife] cannot now be heard to contest the court's jurisdiction."
 {¶ 22} Wife also substantially participated in the litigation proceedings for nearly one year before filing her motion asking the court to refer the case to a church tribunal. Not only did she file an answer and counterclaim without asking for arbitration, but she filed a motion for support pendente lite. In addition, her counsel participated in several pretrials in which the parties agreed to appoint a guardian ad litem and a psychologist who would conduct a custody evaluation, sell the property in New Hampshire and enroll the older children at Holy Trinity School. After Wife's first two lawyers withdrew, she retained a third attorney to represent her in the case. It was not until June 4, 2004, ten months after Wife filed her complaint, that she first asked the court to refer the matter to an otherwise undescribed "canonical tribunal."
 {¶ 23} The record indicates that Wife fully participated in the divorce litigation for nearly one year before filing her request to arbitrate this matter. Not only does Wife's action in filing her complaint refute her argument that the parties had agreed to arbitrate their marital disputes, but her significant participation in this case after it was filed waives any right to arbitration. Accordingly, the trial court did not abuse its discretion in denying Wife's motion.
 {¶ 24} Appellant's first assignment of error is overruled.
 CHILD CUSTODY {¶ 25} In her second assignment of error, Wife argues that "it was an abuse of discretion for the trial court to award custody to [Husband] when his mental state renders him incapable of taking care of the children under R.C. 3109.04(F)(1)(E)." Specifically, Wife claims that Husband is a "profoundly psychotic person" whose mental state renders him incapable of raising the parties' minor children.
 {¶ 26} In support of her argument, Wife cites to an essay authored by Husband prior to the turn of the new millenium, in which Husband predicted that the "Y2K" problem was going to result in a cataclysmic change in society's food and water supply and access to basic utilities. However, Husband's views more than six years ago, bizarre and imprudent as they may seem in the clear light of history, do not reflect on his current ability to adequately care for the minor children. Moreover, Wife ignores significant evidence in the record that she shared Husband's views regarding the looming Y2K crisis and supported the family's move to New Hampshire.
 {¶ 27} Furthermore, after reviewing the record, we agree with the trial court's assessment that although both Husband and Wife have serious idiosyncrasies and emotional issues, "in balancing the negative aspects of Mr. Macfarlane's views versus Mrs. Macfarlane's actions, the court must conclude that Mr. Macfarlane should be the custodial parent for these four boys."
 {¶ 28} The trial court noted that it was well aware that Husband "is autocratic, egotistical, narcissistic and manipulative." Nevertheless, the trial court very carefully explained the evidence it relied upon in concluding that Wife's actions were not beneficial to her children and precluded her from being the residential parent. It noted:
 {¶ 29} "In September 2004, this court was reluctant to change possession of the children to the Father. The court had no desire to take these children away from their mother and their primary residence. However, her violation of a court order in the name of home schooling left this court no other choice. Her failure to comply with the court order and her failure to attend the hearing on September 13th were all part of her ideological battle in promoting home schooling. The needs of her children were not the driving force; rather it was her anger at Mr. Macfarlane and her home schooling crusade that were the compelling forces of her actions."
 {¶ 30} The court noted further that although Wife argued that she did not understand what she was agreeing to when she agreed to sell the New Hampshire property and to enroll the older children in a traditional school, "this court believes that Mrs. Macfarlane did understand what she was doing. She is an extremely intelligent lady. However, she has great difficulty accepting responsibility for her own actions and is always shifting the blame to others."
 {¶ 31} The court further found that due to her obsession with the divorce litigation and the issue of home schooling, Wife just did "not get it" with regard to her behavior and the children. The court identified several of Wife's inappropriate behaviors with respect to her children: bringing the children to the courthouse to pass out a book she had written about the injustice of the court system and her divorce; telling the youngest child that "daddy broke up our home" and "the devil lives in daddy;" blatantly violating a court order to enroll the children in a traditional school, which caused the children to enter school one month late and hampered their transition from home schooling to traditional schooling; continuing to nurse Cleutus, contrary to medical advice, even though his teeth were rotting; and, refusing to engage in any written communication with Husband regarding the children. The court also noted that it had "great concern about the emotional stability of Mrs. Macfarlane."
 {¶ 32} In allocating parental rights and responsibilities, the court must consider the best interests of the child. R.C.3109.04(B)(1). To determine the child's best interests, the trial court is required to consider the factors outlined in R.C.3109.04(F)(1), and may consider additional factors as well. Our review of the record indicates that the trial court considered each of the factors identified in R.C. 3109.04(F)(1), as well as the factors identified in R.C. 3109.04(F)(2) regarding whether shared parenting was in the best interest of the child. Our review indicates that the trial court's findings are supported by the evidence and, accordingly, we find no abuse of discretion in the trial court's decision regarding child custody.
 {¶ 33} Appellant's second assignment of error is overruled.
 GUARDIAN AD LITEM {¶ 34} In her third assignment of error, Wife argues, for the first time on appeal, that it was error for the trial court to allow attorney John Ready to serve as both guardian ad litem and counsel for the children. She contends that there was a conflict of interest between the roles of guardian ad litem and counsel for the children in this case, and that, by the time of trial, Mr. Ready "had become so prejudiced against Mrs. Macfarlane that he should have withdrawn from the case both as guardian and as lawyer."
 {¶ 35} Wife waived this argument, however, for purposes of appeal. The trial court appointed Mr. Ready to act as both guardian ad litem and counsel for the children on September 9, 2003. Wife never raised any objection to this dual appointment or to the appointment of Mr. Ready in any capacity. Furthermore, although Wife contends that the scope of Mr. Ready's alleged prejudice toward her and the extent of the conflict "was only made plain by the guardian's actions at trial," Wife raised no objection to Mr. Ready's appointment during trial.
 {¶ 36} It is well-established that a reviewing court cannot consider an issue raised for the first time on appeal. CCIProps. v. McQueen, Cuyahoga App. No. 82044, 2003-Ohio-3674, at ¶ 24, citing State ex rel. Gutierrez v. Trumbull Cty. Bd. ofElections (1992), 65 Ohio St.3d 175, 177.
 {¶ 37} Even if we were to consider Wife's argument, we find no conflict between Mr. Ready's roles as guardian ad litem and counsel for the children. The mere fact that he did not recommend Wife as the custodial parent and did not ask the court to allow the children to remain in home schooling does not create a conflict or indicate that he was so prejudiced against Wife that he could not adequately perform his roles as guardian and counsel for the children. A guardian is appointed to protect and ensure that the children's best interests are represented throughout the divorce proceedings. If the guardian ad litem believes that it would not be in the best interests of the children to reside with one parent, or that one parent is less likely to abide by court orders and to encourage and facilitate the other parent's time with the children, it is the guardian's duty to relay that recommendation to the court. This appearance of "bias" toward one parent is not "prejudice;" it is the guardian ad litem/counsel fulfilling his role as advocate for his wards.
 {¶ 38} Appellant's third assignment of error is therefore overruled.
 TESTIMONY OF FAMILY AND FRIENDS IN DETERMINING THE BEST INTEREST OF THE CHILDREN {¶ 39} In her fourth assignment of error, Wife complains that the trial court erred in not giving proper weight to the "veritable blizzard" of family and friends who testified on behalf of Wife that she, and not Husband, should be designated as the custodial parent. We disagree.
 {¶ 40} The trial court is in the best position to observe each witness and judge his or her credibility. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77. The credibility of the witnesses and the weight to be given their testimony is primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 231, paragraph one of the syllabus. Thus, the court had no duty to give greater weight to the testimony of Wife's family and friends just because more witnesses testified for Wife than Husband. It was within the trial court's discretion to consider that the testimony of Wife's witnesses contradicted that of Dr. Koricke, the court-appointed psychologist, and the guardian ad litem, both of whom recommended that Husband should be the custodial parent.
 {¶ 41} Our review of the record indicates that the trial court considered all of the necessary factors listed in R.C.3109.04(F)(1) and (F)(2) and that there is competent, credible evidence supporting the trial court's conclusion that designating Husband as the custodial parent is in the children's best interests.
 {¶ 42} Appellant's fourth assignment of error is overruled.
 RELIGIOUS DISCRIMINATION AGAINST WIFE {¶ 43} In her fifth assignment of error, Wife argues that "the trial court erred in considering the mother's religious views about marriage and about home schooling as insurmountable problems for the court, thereby violating Mrs. Macfarlane's constitutional religious freedoms." Specifically, Wife contends that her constitutional right to the free exercise of her religious beliefs has been violated because she is not able to home school her children anymore and, because she is unable to home school, she is unable to raise her children in the Catholic faith.
 {¶ 44} Article I, Section 7, of the Ohio Constitution provides, in part:
 {¶ 45} "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted."
 {¶ 46} The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"
 {¶ 47} Ohio courts have interpreted these sections as they relate to domestic relations cases to mean that a court may not consider a person's religious preference when determining matters of custody or other issues related to the divorce. Hackett v.Hackett (1958), 150 N.E.2d 431. However, absent evidence in the record that the trial court's custody decision was motivated by a conviction that either parent's religious belief was in the best interest of the child, a trial court's custody decision does not implicate the Establishment Clause or the Free Exercise Clause of the First Amendment to the United States Constitution or the Religious Freedom Provision of the Ohio Constitution. deLevie v.deLevie (1993), 86 Ohio App.3d 531, 542.
 {¶ 48} Wife cites no evidence in the record to indicate that the trial court's decision was motivated by a belief that Husband's religious beliefs or practices were preferable to hers. Indeed, the record reflects that the trial court's decision was motivated by Wife's refusal to act in the best interests of her children, not by a preference for either party's religious practices. Moreover, we find nothing in the trial court's decision which affects Wife's right to express her religious beliefs and to raise her children according to those beliefs. No one is preventing Wife from attending services or other activities with her children in furtherance of her beliefs or from enforcing those beliefs with the children at home. Accordingly, we find no violation of Wife's constitutional religious freedoms.
 {¶ 49} Appellant's fifth assignment of error is overruled.
 DIVISION OF MARITAL PROPERTY {¶ 50} In her sixth assignment of error, Wife complains that the trial court erred in its division of marital property because it should have split the earning potential of the Mary Foundation, a non-profit religious foundation established by Husband and Wife during the marriage, in half as part of the marital estate. Wife contends that the Mary Foundation is an income producing asset (Husband takes a salary of approximately $100,000 annually from the foundation) but "no assessment of this asset was undertaken by the court."
 {¶ 51} Wife did not raise this issue below, however, nor did she introduce any evidence regarding the valuation of the foundation for purposes of including it among the parties' marital assets. Moreover, the value of the Mary Foundation cannot be assessed and divided pursuant to the divorce as the foundation is a 501(c)(3) not-for-profit corporation. Thus, it cannot be a marital asset as its value as a not-for-profit organization may not legally inure to the benefit of either party.
 {¶ 52} Our review of the record indicates that the trial court recognized Wife's contribution to the establishment of the Mary Foundation by awarding her spousal support and 50 percent of the royalties from the books that Husband publishes through the Mary Foundation. The trial court stated:
 {¶ 53} "Neither party contributed to the education or training of the other party. Mrs. Macfarlane, however, was an asset to Mr. Macfarlane's establishment of the Mary Foundation which provides Mr. Macfarlane with a good salary. The court has taken that into account since Mrs. Macfarlane no longer participates in the Mary Foundation. The court is also taking into account that she will continue to get royalties from Mr. Macfarlane's three books."
 {¶ 54} We find no abuse of discretion in the trial court's division of the parties' marital assets. Appellant's sixth assignment of error is therefore overruled.
 ALLEGED ANTAGONISM TOWARD CATHOLICISM {¶ 55} In her seventh assignment of error, Wife argues that the trial court showed unconstitutional antagonism toward Catholicism by characterizing her unrelenting pursuit to home school her children as a "crusade." We disagree.
 {¶ 56} The American Heritage dictionary defines "crusade" as "[a] vigorous concerted movement for a cause or against an abuse." Our review of the record indicates that Wife vigorously and repeatedly argued her position that the children should be home schooled. We do not find the trial court's expression of her determination to be perjorative, but rather an accurate reflection of Wife's unwavering support for home schooling.
 {¶ 57} Wife also argues that the court and guardian "entangled the court in religious matters" when the court alternately allowed testimony about religious issues to be admitted, but then later excluded other testimony. Wife's argument is without merit.
 {¶ 58} A review of the passages in the trial transcript cited by Wife indicate that Wife has taken the testimony out of context to make her argument. Our review indicates that the testimony was allowed when it was relevant to issues related to the divorce and child custody, but disallowed when it was not. We find no abuse of discretion in the trial court's evidentiary rulings.
 {¶ 59} Appellant's seventh assignment of error is overruled.
 SPOUSAL ABUSE AND DOMESTIC VIOLENCE {¶ 60} Among one of the factors a court is to consider when determining whether shared parenting is in the best interest of the children is "any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent." R.C. 3109.04(F)(2).
 {¶ 61} In her eighth assignment of error, Wife contends that an incident that occurred in New Hampshire, when Husband allegedly dragged her across the grass, rises to the level of domestic violence. She further contends that Husband had a history of using a show of force whenever possible with her. Accordingly, she asserts that the trial court erred in finding that the incident in New Hampshire did not rise to an instance of domestic violence and, further, that the trial court erred in not considering Husband's "potential" for domestic violence in allocating parental rights.
 {¶ 62} Once again, we note that the credibility of the witnesses and the weight to be given their testimony is primarily for the trier of fact. DeHass, supra. Here, the trial court heard both Wife's and Husband's account of the incident in New Hampshire, as well as lengthy testimony regarding other interactions between the parties, and found that there was no domestic violence or history of physical abuse. We find nothing, upon our review of the record, to indicate that the trial court abused its discretion in reaching this conclusion.
 {¶ 63} Appellant's eighth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Blackmon, J., concur.
[1] Wife's first two lawyers were each permitted to withdraw upon motion to the court.