**WILBURN, Appellee,**

v.

**WILBURN, Appellant.**

[Cite as *Wilburn v. Wilburn,* 169 Ohio App.3d 415, 2006-Ohio-5820.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 05CA008798.

Decided Nov. 6, 2006.

Sam R. Bradley and Wayne R. Nicol, for appellant.

Paul Kocsis, for appellee.

BOYLE, Judge.

{¶ 1} Appellant, Carol Wilburn, appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, which granted the motion of appellee, Lee Wilburn, to reallocate parental rights and responsibilities regarding their daughter. This court affirms.

I

{¶ 2} After 20 years of marriage, appellee, Lee Wilburn ("the father") filed for a divorce from appellant, Carol Wilburn ("the mother"). The judgment decree of divorce was granted by the Lorain County Common Pleas Court, Domestic Relations Division, on May 24, 1998. There were three children from the marriage: Damien, who was emancipated, and Devon and Tiffanie, both minors.

{¶ 3} The mother retained legal custody of their two minor children. The father was permitted reasonable visitation with the children pursuant to an agreed-upon visitation schedule. The agreed-upon visitation schedule was be-

grudgingly utilized until the summer of 2001, when Devon was emancipated, thereby leaving Tiffanie as the sole remaining minor from the marriage.

{¶ 4} Because the parties could not reach an agreement for the father to have reasonable visitation with his daughter, the trial court held a hearing on June 4, 2003. After the hearing, the magistrate ordered, over the mother's objections, a parenting schedule for the father to visit with his daughter. The mother filed an objection to the magistrate's decision, which was heard by Judge Basinski on September 11, 2003. On October 1, 2003, the trial judge adopted the magistrate's decision.

{¶ 5} Sometime between mid-September and the beginning of October 2003, the mother brought Tiffanie with her to the Domestic Relations Court and demanded to speak with Judge Basinski regarding the new visitation schedule. The assignment commissioner called Judge Basinski's law clerk/magistrate, Jody Barilla, to speak with the mother. The mother advised Barilla that she was displeased with the trial court's decision granting the father visitation and wanted the judge to take her daughter. Barilla advised the mother to file a motion regarding her concerns. At the end of the conversation, the mother claimed that she would just turn Tiffanie over to Children Services.

{¶ 6} Following the trial court's adoption of the magistrate's decision, the mother voluntarily contacted the father about giving him custody of Tiffanie. In response to the mother's agreement to change custody, the father filed a motion to reallocate parental rights and responsibilities. The mother changed her mind, and the matter was set for trial. Prior to trial, the mother moved the trial court to appoint a guardian ad litem for Tiffanie, which was granted. The guardian ad litem filed her report with the trial court on May 26, 2004.

{¶ 7} The trial on the motion to reallocate parental rights and responsibilities was held on May 27, 2004, June 17, 2004, and August 26, 2004. Prior to closing arguments, the mother moved the trial court to provide Tiffanie with counsel because she felt that there was a conflict of interest between Tiffanie's desires and the guardian ad litem's recommendations. The request was denied. Instead, the trial court conducted in camera interviews with Tiffanie on May 25, 2004 and August 30, 2004 to determine Tiffanie's position.

{¶ 8} A year later, the trial court granted the father's motion to reallocate parental rights, giving him legal custody of Tiffanie and relieving him of his child-support obligations. The mother was granted visitation rights and ordered to pay child support to the father in the amount of $319.94 per month. The mother timely filed a motion for new trial, which was denied. The mother now appeals, asserting four assignments of error.

## II

### A

#### First Assignment of Error

The trial court erred by permitting Magistrate Barilla to testify in a custody action on behalf of the plaintiff, Lee Wilburn, regarding information learned during an ex parte communication with the defendant, Carol Wilburn, when Magistrate Barilla was an employee of the trial court and subject to the trial judge's direction and control[,] whose duty it was to render an ultimate decision in the action.

{¶ 9} In her first assignment of error, the mother alleges that it was improper for Magistrate Barilla, as an employee of the trial court, to testify as a rebuttal witness on behalf of the father. Based upon Magistrate Barilla's alleged ex parte communication initiated by the mother, the mother argues that Judge Basinski should have recused himself from the case. It is the mother's position that the trial judge's failure to recuse himself and to permit his magistrate to testify caused bias and prejudice, violated the Code of Judicial Conduct, and constituted plain error.

{¶ 10} This court lacks jurisdiction to hear the mother's allegations regarding the trial judge's alleged bias and prejudice in violation of the Code of Judicial Conduct. "The Chief Justice of the Supreme Court of Ohio, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 11, 663 N.E.2d 657, citing Section 5(C), Article IV, Ohio Constitution. Thus, an appellate court lacks the authority to pass upon the disqualification of a common pleas judge or to void a judgment of a trial court on that basis. *State v. Ramos* (1993), 88 Ohio App.3d 394, 398, 623 N.E.2d 1336. "[A]ny allegations of judicial misconduct are not cognizable on appeal, but [are] a matter properly within the jurisdiction of the Disciplinary Counsel." *Szerlip v. Spencer* (Mar. 14, 2002), 5th Dist. No. 01CA30, 2002 WL 433442, at *1. Accordingly, we are without jurisdiction to decide the mother's first assignment of error.

{¶ 11} The mother's first assignment of error is overruled.

### B

#### Second Assignment of Error

The trial court erred by failing to appoint counsel for the minor child so that the child's interests could be properly advocated, after the appointed guardian

ad litem was unwilling to make a recommendation to the court of the child's desire to reside with her the mother, Ms. Carol Wilburn.

{¶ 12} In her second assignment of error, the mother alleges that there was a conflict of interest and the guardian ad litem ("GAL") did not comply with her duties, as she failed to file a report and to make a definitive recommendation to the trial court. Additionally, the mother alleges that the GAL's recommendations did not coincide with Tiffanie's wishes. Based on these conflicts, the mother argues that Tiffanie should have been appointed separate counsel to advocate the child's wishes. Further, the mother claims that Tiffanie was a party to the custody hearing and should have been represented by counsel. We disagree.

{¶ 13} Generally, decisions from the domestic relations court, including custody proceedings and the appointment of a guardian ad litem and/or an attorney for a child, are reviewed for an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846; *Smith v. Quigg*, 5th Dist. Nos. 05–CA–61, 05–CA–62, and 05–CA–79, 2006-Ohio-1670, 2006 WL 847086, at ¶ 13. See *Bailey v. Bailey* (Sept. 29, 1994), 10th Dist. No. 93–APF12–1694, 1994 WL 530305, at *3. See, generally, *Wallace v. Wallace* (1974), 49 Ohio App.2d 31, 34, 3 O.O.3d 105, 358 N.E.2d 1369. An abuse of discretion is more than an error of law or judgment; rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 14} The mother's argument in her second assignment of error relies upon the application of the Juvenile Rules of Procedure and permanent-custody case law for the appointment and responsibilities of a GAL. The mother urges us to apply the same rules and law used in permanent-custody cases to the instant divorce custody dispute. As to the responsibilities and duties of a GAL, we find that there is some overlap between juvenile court and domestic relations court. However, with regard to the appointment of a GAL and counsel for a child, we decline to apply the statutes and case law used in permanent-custody matters.

{¶ 15} We do not rely upon permanent-custody case law and juvenile court statutes, because Civ.R. 75(B)(2) specifically addresses the joinder of a child in a divorce custody action. Civ.R. 75(B)(2) states:

> When it is essential to protect the interests of a child, the court *may* join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, *if necessary,* for the child and tax the costs. (Emphasis added.)

Accordingly, the joinder of a child in a divorce custody case is not mandatory. Further, Civ.R. 75(B)(2) does not state that the appointment of a GAL makes the child a party to the case.

{¶ 16} Neither does R.C. 3109.04(B)(2)(a), which governs the appointment of a GAL in a pending motion for the allocation of parental rights, make a child a party to the divorce custody dispute. R.C. 3109.04(B)(2)(a) provides that "[t]he court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child" when the court interviews the child and considers what is in the best interests of the child. However, an appointment of a GAL under this statute and these circumstances does not automatically make the child a party to the proceedings.

{¶ 17} In this case, the mother moved the trial court for the appointment of a GAL for Tiffanie with regards to the upcoming trial regarding the father's motion for reallocation of parental rights. The mother's motion did not request that Tiffanie be made a party to the case or that Tiffanie be appointed counsel. The trial court granted the mother's motion and appointed a GAL for Tiffanie. See R.C. 3109.04(B)(2)(a). There is no evidence in the record that Tiffanie was ever made a party to the case or assigned counsel. Because Tiffanie was not a party to the case, the trial court was correct in denying the mother's untimely motion for appointment of counsel. While Tiffanie had a court-appointed GAL, she was not required to be a party to the case or to be represented by appointed counsel.

{¶ 18} "A guardian is appointed to protect and ensure that the children's best interests are represented throughout the divorce proceedings." *MacFarlane v. MacFarlane*, 8th Dist. No. 86835, 2006-Ohio-3155, 2006 WL 1704531, at ¶ 37. This is accomplished by the GAL conducting an investigation of the child's situation and then making recommendations, written or oral, to the court as to what decisions would be in the child's best interest. *Sabrina J. v. Robbin C.*, 6th Dist. No. L-00-1374, 2002-Ohio-2691, 2002 WL 1303148, at ¶ 25. A GAL serves in a dual capacity of GAL and counsel to the child only when the trial court expressly orders and finds there is no conflict of interest between the child's wishes and the best interests of the child. Id.

{¶ 19} In this case, the GAL investigated the circumstances surrounding the custody dispute of Tiffanie. The GAL put the results of her investigation into a five-page report that was filed with the trial court. The GAL begins her report by advising the trial court that "[t]here is no question that Tiffanie is very definite about wanting to live with her the mother and has expressed her opinion strongly about not visiting with her the father * * *." The GAL concludes her report by making the following recommendation to the trial court:

Prior to trial, it would be the somewhat reluctant opinion of this G.A.L. that Tiffanie remain in Mrs. Wilburn's custody; that the father continue with the visitation he currently has unless the court sees fit to expand that visitation; that the mother be made to understand that she is not to make extra rules about that visitation, but abide by the rules and orders of the court; that neither parent use Tiffanie as a messenger between themselves; that both parents attend (or reattend) the seminar for separating parents, or enroll and complete parenting classes; and that both parties stop filling this child's mind with negative opinions about the other parent or punishing her if she enjoys the time she spends with the other parent.

{¶ 20} Despite the mother's arguments to the contrary, the record clearly establishes that (1) the GAL filed a report the day before trial, (2) the report stated Tiffanie's desire to remain with the mother, and (3) the report provides a rather lengthy list of recommendations ranging from who should be awarded custody to how the parties should act. Based upon the GAL's report, there is no conflict of interest. Tiffanie's desires and the GAL's recommendation are the same: Tiffanie wishes to remain with the mother, and the GAL recommends that the mother retain custody of Tiffanie.

{¶ 21} Further, the record in this case is devoid of any evidence that the trial court made a dual appointment for the GAL. Therefore, the GAL served only as guardian, and not as both guardian and attorney for Tiffanie. See *Sabrina J.* at ¶ 25; *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841, 844–845, 673 N.E.2d 217. Because there is no dual appointment in this case, there can be no conflict of interest between the GAL and counsel.

{¶ 22} At trial, the GAL waived opening statements and the mother contends that this was a violation of her duties. However, there is no requirement that the GAL give an opening statement. The mother also attacks the GAL's alleged failure to make a recommendation at the close of the trial. Even though the GAL said, "So, without making a recommendation to this court" in her closing statement, the GAL nevertheless does give the trial court an oral recommendation. The GAL points out that there are two factors revolving around Tiffanie's age that favor custody with the mother: Tiffanie's physical development as a teenage girl and her emotional relationship with the father. The GAL's oral recommendation at the end of the trial remained consistent with her written recommendation prior to trial and Tiffanie's wishes. While the GAL's oral recommendation was not expressly stated, she did provide the trial court with a recommendation in her closing argument.

{¶ 23} Accordingly, we find that there was no conflict of interest between the GAL and Tiffanie. Thus, the trial court did not abuse its discretion in denying the mother's motion for appointment of counsel for Tiffanie.

{¶ 24} The mother's second assignment of error is overruled.

## C
### Third Assignment of Error

The trial court abused its discretion by considering the guardian ad litem report which was not properly filed with the court clerk and not made readily available to counsel for the parties or to the parties, contrary to statute.

{¶ 25} The mother's third assignment of error contains contrary positions. Initially, the mother alleges that the GAL did not file a report with the clerk of courts. Then the mother alleges that the report was filed, but was not provided to the parties or notice given to the parties that the report was available for examination. The mother contends that these are violations of R.C. 2317.39 and that the report cannot be used by the trial court. We disagree with both of the mother's contentions.

{¶ 26} We note that the majority of the mother's argument with regard to the third assignment of error again relies upon Juvenile Rules of Procedure, statutes pertaining to juvenile court, and permanent-custody cases, which originate in juvenile court. Juvenile court and domestic relations court have concurrent jurisdiction when there is a dispute of custody following a divorce decree; thus, there is some overlap in the application of the juvenile and domestic relations statutes. *In re Black* (Sept. 11, 1997), 3d Dist. No. 4–97–11, 1997 WL 567924, at *2. However, the parties were before the trial court on the father's motion for reallocation of parental rights and not due to a permanent-custody action (the termination of parental rights). Accordingly, permanent-custody case law is not applicable to this case.

{¶ 27} Further, the mother's reliance on R.C. 2317.39 is also misplaced. Courts are obliged to apply statutes of specific application over a general statute. *In re Watts* (Oct. 4, 1995), 9th Dist. No. 17158, 1995 WL 592249, at *2. R.C. 2317.39 is a statute that governs reports generally, and not reports by guardians ad litem. Id. The report of the GAL in this case is governed by R.C. 3109.04(C) due to the father's pending motion for reallocation of parental rights and responsibilities. Accordingly, we will follow the provisions of R.C. 3109.04, and not R.C. 2317.39, regarding the GAL's report.

{¶ 28} R.C. 3109.04(C) provides that "[t]he report of the investigation and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, *upon written request.*" (Emphasis added.) Additionally, Civ.R. 75(D), which applies in divorce cases and the filing of a modification of parental rights, allows for "[t]he report of the investigation [to] be made available to either party or their counsel of record *upon written request* not less than seven days before trial." (Emphasis added.) The investigative reports referred to in R.C. 3109.04(C) and Civ.R. 75(D) include reports by a

court-appointed GAL. See *Evans v. Evans* (Sept. 20, 2001), 10th Dist. Nos. 00AP–1459, 00AP–1466, 2001 WL 1098065, at *2. See, generally, *Dehoff v. Dehoff* (Apr. 25, 1988), 5th Dist. No. CA–7323, 1988 WL 38552, at *2.

{¶ 29} Despite the mother's claim, the observations and recommendations of the GAL were reduced to writing and filed with the trial court on May 26, 2004, the day before trial began. There is no evidence in the record that the mother or her trial counsel ever submitted a written request for the GAL's report prior to trial. Accordingly, neither the GAL nor the trial court was required to provide the mother or her counsel with a copy of the report. See R.C. 3109.04(C).

{¶ 30} Further, at the beginning of the trial, the judge commented to all the parties that he had received the GAL's report. Accordingly, the mother and her counsel were immediately put on notice that the GAL's report was filed and before the court. Despite this notice, the mother did not move the trial court for a brief recess to review the GAL's report before proceeding with trial. See *Dobran v. Dobran* (Sept. 1, 1999), 7th Dist. No. 97 CA 166, 1999 WL 689220, at *3.

{¶ 31} The trial in this matter lasted a total of three days, but was extended over a 30–week period. Accordingly, the mother and her counsel had plenty of opportunity during the 30–week period to obtain and review the GAL's report. Additionally, the GAL was present during each of the three days of trial. At no time during the trial did the mother request to cross-examine the GAL regarding her report. Accordingly, the mother's due process rights with regard to the trial court's reliance upon the GAL's report were not violated. See *Webb v. Lane* (Mar. 15, 2000), 4th Dist. No. 99CA12, 2000 WL 290383, at *3.

{¶ 32} Ordinarily, to preserve a trial court error for appeal, an objection must be timely raised to the trial court, where the alleged error may be corrected, or else the objection is waived; it may not be raised for the first time on appeal. *State v. Riley,* 9th Dist. No. 21852, 2004-Ohio-4880, 2004 WL 2050521, at ¶ 27, citing *State v. Dent,* 9th Dist. No. 20907, 2002-Ohio-4522, 2002 WL 2008423, at ¶ 6. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

{¶ 33} The mother has clearly abandoned her right to the GAL's report based upon her failure (1) to provide a written request for the GAL report pursuant to the statute and Ohio Rules of Civil Procedure, (2) to request a recess on the first day of trial to review the report, (3) to obtain a copy of the report during the trial's 13–week pendency, and (4) to cross-examine the GAL regarding

the report. Further, the mother's waiver of her right of access to the GAL's report does not preclude the trial court from utilizing the report in its determination of custody.

{¶ 34} The mother's third assignment of error is overruled.

## D

### Fourth Assignment of Error

The trial court abused its discretion by imputing income to the appellant for purposes of calculating child support.

{¶ 35} In her fourth assignment of error, the mother alleges that the trial court abused its discretion in imputing income to her without a finding regarding her job qualifications and the prevailing job opportunities and salary levels in the community. We disagree.

{¶ 36} Decisions regarding child-support obligations will not be disturbed absent an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus. We begin our analysis by first determining which statute regarding child-support obligations applies in this case. The statute in effect at the time of the filing of the motion for reallocation of parental rights governs the calculation and award of child support. See *Zahn v. Zahn*, 9th Dist. No. 21541, 2003-Ohio-6124, 2003 WL 22715673, at ¶ 9; *Williams v. Williams* (1992), 80 Ohio App.3d 477, 482, 609 N.E.2d 617. Former R.C. 3113.215 was repealed and replaced by R.C. 3119.01 et seq. effective March 22, 2001. S.B. No. 180, 123 Ohio Laws 291. Because the father filed his motion for reallocation of parental rights on October 10, 2003, R.C. 3119.01 will govern the calculation and award of child support in this case.[1]

{¶ 37} Pursuant to R.C. 3119.01(C)(5)(b), "income" for purposes of determining child support for an unemployed or underemployed parent includes the gross income and any potential income of the parent. Before income may be imputed to a parent, a court must find that the parent is voluntarily unemployed or underemployed. *Keller v. Keller*, 9th Dist. No. 04CA0084, 2005-Ohio-3302, 2005 WL 1523860, at ¶ 13. Whether a parent is voluntarily unemployed or underemployed is a factual determination within the trial court's discretion. *Zahn v. Zahn*, 9th Dist. Nos. 21879, 21880, 2004-Ohio-4881, 2004 WL 2050526, at ¶ 10, citing *Rock*, 67 Ohio St.3d at 112, 616 N.E.2d 218.

---

1. The mother's fourth assignment of error incorrectly relies upon R.C. 3113.215.

{¶ 38} Upon a finding of either voluntary unemployment or underemployment, the trial court then must consider the factors set forth in R.C. 3119.01(C)(11)(a):

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) Any other relevant factor.

The amount of income to be imputed upon a parent is derived from the trial court's consideration of the above factors. *Keller* at ¶ 14. It is the responsibility of the party moving for child support to show which relevant factors support the modification of child support. Id. at ¶ 17. It is not the trial court's duty to investigate or develop evidence not presented by the parties. Id. Instead, the trial court may presume that any factor not substantiated by evidence is immaterial to its determination of imputing income. Id.

{¶ 39} We find that the trial court did not abuse its discretion by ordering child support based upon income imputed to the mother. The trial court's judgment entry relating to child support stated in its entirety:

The mother was previously employed at Farm Credit Services, having worked there for seven years. She quit her job in August, 2003. (Trans. at p. 21). She was earning approximately $36,000.00 annually with overtime and bonuses; her base salary was $26,000.00. (Trans. at p. 21, 22). The Court finds her to be voluntarily unemployed and imputes these wages to her.

The trial court's findings are supported by the mother's testimony on cross-examination. The judgment entry clearly finds and designates the mother as being voluntarily unemployed. Further, the judgment entry correctly states the mother's potential and probable earnings based on her prior work history.

{¶ 40} The mother's brief does not dispute these findings. Instead, she incorrectly relies upon R.C. 3113.215(A)(5)(a) and asserts that the trial court

abused its discretion in failing to consider her job qualifications or the prevailing job opportunities and salary range in Lorain County. There was no evidence presented to the trial court regarding either of these factors. Accordingly, the trial court did not abuse its discretion in finding the unsubstantiated factors as immaterial and imputing income to the mother based upon the limited evidence at trial.

{¶ 41} The mother's fourth assignment of error is overruled.

## III

{¶ 42} The mother's assignments of error are overruled. The judgment of Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

REECE, J., concurs in part and dissents in part.

REECE, Judge, concurring in part and dissenting in part.

{¶ 43} A whole year had passed since the mother left her job and the time the trial judge ordered her to pay monthly child support. There was no order for her to pay support at the time of her unemployment.

{¶ 44} The majority first states that "it is the responsibility of the party moving for child support to show which relevant factors [of R.C. 3119.01(C)(11)(a) ] support the modification of child support." It then concludes later that "[t]here was no evidence presented to the trial court regarding either of these factors," the factors being job qualifications or the prevailing job opportunities and salary range in Lorain County.

{¶ 45} Since I agree with both of these conclusions and believe that they result in a failure of proof regarding how much income should be imputed to the mother, I would reverse the judgment and remand the cause for a further hearing on that requirement on appellant's fourth assignment of error.

{¶ 46} I concur in the balance of the opinion.

REECE, J., retired, of the Ninth Appellate District, sitting by assignment.