DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Adams County Common Pleas Court, Juvenile Division, judgment that awarded Adams County Children Services (ACCS) permanent custody of M.C., born April 25, 2000, J.C., Jr., born July 23, 2003, and N.C., born February 6, 2005.
 {¶ 2} Appellant Nicole Kemper, the children's natural mother, raises the following assignment of error: *Page 2 
 "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN WHERE THE GUARDIAN AD LITEM WHO IS CHARGED WITH THE DUTY TO INVESTIGATE AND REACH A RECOMMENDATION ON THE CASE REGARDING THE CHILDREN DID NOT EVEN MEET WITH THE MINOR CHILDREN BEFORE RECOMMENDING PERMANENT CUSTODY TO THE CHILDREN'S SERVICES AGENCY IN THE CASE."
 {¶ 3} ACCS became involved in the mother's and the father's lives due to their repeated drug abuse. On February 5, 2004, ACCS filed complaints and alleged M.C. and J.C. to be dependent children. On April 23, 2004, ACCS filed an ex parte motion and requesting temporary custody of the children because the mother was incarcerated at the Adams County Jail and the father was incarcerated at the Brown County Jail. The trial court granted ACCS temporary custody of M.C. and J.C. and the parents subsequently admitted the dependency allegation.
 {¶ 4} On May 9, 2005, ACCS filed a complaint and alleged N.C. to be a neglected and dependent child. On that same date, the trial court granted ACCS temporary custody of the child. On August 15, 2005, the court adjudicated the child dependent and neglected.
 {¶ 5} On February 2, 2006, the mother requested a six month continuance so that she could complete the Stepping Stones program and then enter a transitional program and "intensive out patient classes at The Counseling Center here in Portsmouth." She stated she would attend GED classes at Shawnee State and find employment. She also registered for public housing and was *Page 3 
placed on the waiting list for a three bedroom apartment. The trial court continued the matter until August 15, 2006.
 {¶ 6} On July 6, 2006, ACCS requested permanent custody of the three children. ACCS asserted that the agency had been working with the parents for several years (M.C. and J.C. have been in its custody since April 26, 2004, while N.C. has been in its custody since June 15, 2005) and that neither parent had taken the steps necessary to enable the children to return home.
 {¶ 7} On December 12, 2006, the mother filed a motion to continue the January 4, 2007 permanent custody hearing because she was enrolled in an intensive drug rehabilitation program at the Franklin Pre-release Center in Columbus. She also stated that she was enrolled in parenting and family skills training programs and that if she successfully completed the program, she would be released in March. If, however, she missed a certain number of treatment dates, she would be ejected from the program and would serve her original two-year mandatory sentence. Thus, she contended that if she attended the permanent custody hearing she would be terminated from the program.
 {¶ 8} On January 4, 2007, a "circumstances of permanent surrender" was filed indicating that the mother would like to terminate her parental rights. Also, the guardian ad litem filed a report and recommended that the court award ACCS permanent custody. He stated that he interviewed an ACCS caseworker and the children's parents. He did not, however, speak with the *Page 4 
children "as it is apparent that the children are too young to make any rational decisions regarding their own custody." The guardian ad litem stated "it seems that the natural parents of these children have expressed no genuine desire to be parents of these children. [They] have had ample opportunity to visit with the children but have failed to do so. [The father] has declined to exercise any visitation with the children, by his own admission, and has failed to comply with the case plan by failing several drug tests. He is currently incarcerated in the Adams County Jail on felony charges. [The mother] is currently serving a sentence in state prison and has not complied with the case plan on several levels. To place the children in the hands of these parents would be jeopardizing the lives and health of the already fragile children."
 {¶ 9} On January 4, 2007, the trial court held a hearing to consider the permanent custody motion. Because the mother was incarcerated and did not wish to attend the permanent custody hearing for fear of termination from the drug rehabilitation program, the court heard the mother's testimony via telephone. She stated that she did not want to voluntarily surrender the children and claimed that she would be released in March if she successfully completed the drug rehabilitation program.
 {¶ 10} ACCS caseworker Kristi Maynard testified that since the children were removed from the parents' custody, neither parent successfully completed the case plan goals of remaining drug-free *Page 5 
and providing a stable home. She stated that in the nearly three years that ACCS had temporary custody of the two older children and the year and one-half that it had custody of the younger child, it had not been able to place the children in the parents' care. She explained that the mother was in-and-out of the Stepping Stones program and was unable to remain completely drug-free. Furthermore, as of the permanent custody hearing date both parents remained incarcerated.
 {¶ 11} On January 30, 2007, the trial court awarded ACCS permanent custody. The court found that: (1) the parents have had ACCS's assistance since October of 2003; (2) ACCS had temporary custody of M.C. and J.C. for approximately thirty-two months and of N.C. for approximately eighteen months; (3) the mother had not visited with the children since July of 2006, when she was incarcerated; (4) the father had not visited with the children since August of 2006; (5) a relative placement is not available; and (6) the children's need for a legally secure placement could not be achieved without a grant of permanent custody. The court additionally found that the children could not be placed with either parent within a reasonable period of time. The court also determined that the parents have continuously and repeatedly failed to remedy the problems that led to the children's removal: (1) they had a continued pattern of drug abuse; (2) neither parent completed parenting skills training; (3) the parents display chronic chemical dependency *Page 6 
which created an inability to provide an adequate home for the children; and (4) both parents have been repeatedly incarcerated which prevented them from providing necessary care for the children. The court found that the parents' actions displayed an unwillingness to provide basic necessities for their children. Consequently, the court determined that a permanent custody award will serve the children's best interests. This appeal followed.
 {¶ 12} In her sole assignment of error, appellant asserts that the trial court erred by awarding ACCS permanent custody when the guardian ad litem failed to personally meet with the children before he recommended a permanent custody disposition.
 {¶ 13} "`A guardian is appointed to protect and ensure that the children's best interests are represented throughout the * * * proceedings.' MacFarlane v. MacFarlane, Cuyahoga App. No. 86835,2006-Ohio-3155, at ¶ 37. This is accomplished by the GAL conducting an investigation of the child's situation and then making recommendations, written or oral, to the court as to what decisions would be in the child's best interest. Sabrina J. v. Robbin C, 6th Dist. No. L-00-1374, 2002-Ohio-2691, at ¶ 25." Wilburn v. Wilburn, 169 Ohio App.3d 415,2006-Ohio-5820, 863 N.E.2d 204, at ¶ 18. R.C. 2151.281(I) requires a guardian ad litem in a permanent custody case to:
 perform whatever functions * * * necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court *Page 7 
proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child.
A number of courts have determined that when a parent cannot establish any prejudice arising from the action or non-action of a guardian ad litem, then any potential error constitutes harmless error. See In re Sanders, Tuscarawas App. No. 2004AP080057, 2004-Ohio-5878; In re Ridenour, Lake App. Nos. 2003-L-146, 2003-L-147, and 2003-L-148,2004-Ohio-1958; In re Schupbach (July 6, 2000), Tuscarawas App. No. 2000AP010005; In re Malone (May 11, 1994), Scioto App. No. 93CA2165; In re Doe (Sept. 17, 1993), Lucas App. No. L-92-296. Moreover, in the case sub judice appellant has not cited any authority to support her proposition that a guardian ad litem's failure to comply with the statutory duties mandates a reversal of a grant permanent custody. Cf. In re Andy-Jones, Franklin App. Nos. 03AP-1167 and 03AP-1231.
 {¶ 14} In the case sub judice, we conclude that the guardian ad litem's actions did not prejudice appellant and do not constitute reversible error. Obviously, interviews with children of tender years will generally yield information of very little or no benefit. Moreover, even if we assume for purposes of *Page 8 
argument that the guardian ad litem somehow violated his duty to investigate, any error in this regard constitutes harmless error.
Our independent review of the record reveals ample evidence to support the trial court's decision to award ACCS permanent custody. Further, we note that appellant does not argue that the evidence fails to support the trial court's decision. She does not argue that the trial court erred by determining that awarding ACCS permanent custody is in the children's best interests. Rather, she asserts that the guardian ad litem's alleged failure to comply with the statutory duties requires us to reverse the trial court's decision. After our review, we believe that overwhelming evidence supports the trial court's permanent custody decision (which we further outline in the companion appeal, see In the Matter of J.C., Meigs App. No. 07CA834) and any error associated with the guardian ad litem's performance of his duties is harmless at most.
 {¶ 15} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
 The Court finds there were reasonable grounds for this appeal. *Page 9 
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. McFarland, P.J.: Concurs in Judgment Opinion
 Kline, J.: Concurs in Judgment Only *Page 1