OPINION
{¶ 1} Appellants, S.O. and S.M. (parents) and L.O. (grandmother), appeal a decision of the Madison County Common Pleas Court, Juvenile Division, granting permanent custody of T.M. to the Children Services Department of the Madison County Department of Job and Family Services (Children Services). *Page 2 
 {¶ 2} Children Services first became involved with T.M. and her parents when the child was around two months old. At that time, the child had a burn on her face caused by her father holding her too close to a vaporizer. The agency began providing parenting classes for both the mother and father at that time. Around the age of three and half-months old, T.M. was taken to the hospital due to swelling in her leg. Testing revealed that the child had sustained five limb fractures. T.M. had a fracture on each of her arms and legs and an additional fracture on one of her legs. Medical testimony established that the injuries were intentionally inflicted and a great degree of force was used to cause the fractures.
 {¶ 3} At the time of their discovery, the fractures were in different stages of healing. However, it was determined that they had all occurred within a ten-day time frame. The only people who cared for the infant during the time period were the parents, the grandmother and her boyfriend. None of the adults who had access to the child during this time claim any knowledge of how the injuries were inflicted.
 {¶ 4} In early December, 2004, Children Services filed a complaint alleging that T.M. was a dependent child and temporary custody was granted to the agency. At an adjudication hearing in January 2005, both parents admitted that the child was dependent and temporary custody to the agency was continued. A dispositional review hearing was held in the fall of 2005 at the request of the agency. Children services requested the review hearing for further direction regarding whether reunification with the parents should be continued as the goal. The trial court issued a decision in December 2005, finding that reunification could not occur with any of the four persons who were possible perpetrators of the abuse. The parents and grandmother appealed this decision.
 {¶ 5} Children Services filed a motion for permanent custody of the child in March 2006. The motion was stayed pending resolution of the appeal. This court found that the *Page 3 
appeal from the review hearing was not a final appealable order. In reT.M., Madison App.
Nos. CA2006-01-001, CA2006-01-004, 2006-Ohio-6548. A hearing on the permanent custody motion was held on March 30, 2007 and the trial court issued an entry on April 10, 2007 granting permanent custody of T.M. to Children Services.
 {¶ 6} The parents and grandmother now appeal the trial court's decision to grant permanent custody of the child to the agency. The parents raise the following assignments of error for our review:
 {¶ 7} "THE TRIAL COURT ERRED BY DETERMINING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE TO GRANT PERMANENT CUSTODY TO THE AGENCY."
 {¶ 8} "THE GRANT OF PERMANENT CUSTODY WAS A DIRECT VIOLATION OF APPELLANT'S [SIC] FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION."
 {¶ 9} "THE TRIAL COURT ERRED IN DETERMINING THAT THE AGENCY MADE REASONABLE EFFORTS TO REUNITE THE CHILD WITH HER PARENTS AND FAILED TO MAKE REASONABLE CASE PLANNING AND DILIGENT EFFORTS TO ASSIST THE PARENTS."
 {¶ 10} The grandmother raises the following assignment of error for our review:
 {¶ 11} "THE TRIAL COURT ERRED WHEN IT DID NOT CONSIDER THE MATERNAL GRANDMOTHER AS A PLACEMENT OPTION FOR [T.M] BEFORE GRANTING PERMANENT CUSTODY OF THE CHILD TO CHILDREN SERVICES."
 {¶ 12} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent have been met. Santosky v. Kramer
(1982), 455 U.S. 745, 759, 102 S.Ct. 1388. An appellate court's review of a juvenile court's decision finding clear and convincing evidence is limited to whether sufficient credible *Page 4 
evidence exists to support the juvenile court's determination. In reStarkey, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 13} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the trial court must find that: 1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C.2151.414(D); and, 2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C.2151.414(B)(1)(a), (b), (c) and (d); In re Schaefer, 11 Ohio St.3d 498,2006-Ohio-5513, ¶ 31-36; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 14} In the parents' first assignment of error, they challenge the trial court's best interest determination on three separate bases. They argue that there is clear and convincing evidence of a relationship and interaction between the child and parents, that the court should not have considered the guardian ad litem's report, and that there is clear and convincing evidence that a legally secure placement can be achieved without a grant of permanent custody.
 {¶ 15} With respect to determining the best interest of the child, R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, *Page 5 
siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} The parents argue that there is clear and convincing evidence that there is a relationship and interaction between the child and her biological family. The trial court stated that it had considered the statutory factors in making a best interest determination. The fact that there is a relationship, bond and interaction with the child and her biological family is not disputed. However, the focus of the court's decision is on issues involving the safety of the child. We find no error in the trial court's weighing of the factors and determining that ensuring the child's physical safety was the paramount concern in this case.
 {¶ 22} The evidence showed that at the age of two months, the child suffered a burn caused by her father, and at less than four months old, had five broken bones. Medical testimony established that the broken bones could only have been caused by a great deal of force and that the injuries were intentionally inflicted and were not the result of an accident or medical condition. The parties agree that only four people had access to the child during the *Page 6 
time the injuries were inflicted, yet no one has taken responsibility for the injuries. Witnesses from the agency testified that they were unable to return the child to her home without identifying the perpetrator, as all four people lived in close proximity of each other and returning the child home would be placing her back with the person who caused the abuse. Witnesses also testified that it was imperative that the person responsible for the abuse first accept responsibility for their actions, and then engage in counseling tailored to rehabilitate and ensure that the situation that led to the abuse does not occur again. The witnesses testified that until this occurs, there is still risk to the child.
 {¶ 23} In addition, there was testimony that although the parents were involved in parenting classes and received instruction on how to parent the child, they were unable to implement what they had learned on a long-term basis. Both parents had difficulty with basic parenting skills and understanding of the behavior and capabilities of children at various stages of development. Although the parents were willing to take part in services and instruction, the parenting instructor and the caseworker both testified at the permanent custody hearing that although the parents initially appeared to be making some progress towards improving their parenting skills, the progress was not adequate to reduce the risk of harm to a child in their care. Both parents needed reminders of basic parenting skills during their visitations, even when reminded at the start of the visit. In the areas where the parents appeared to be progressing, the follow-through in continuing proper parenting skills did not always occur at subsequent visits.
 {¶ 24} There were also concerns regarding the parents' ability to cope with the demands of parenting on a full-time basis without having support services, and particularly if one of the parents were to be alone with the child. The father also had some issues with anger management. These concerns increased when the parents had a second child, as *Page 7 
parenting two children would increase the demands on the parents. The parents exhibited little ability to deal with the child's normal behavior as a toddler during a group class, and it was eventually decided that only the foster mother would attend the classes so that the child could continue to learn. Given these safety concerns, we find no error in the trial court's weighing of the factors relative to the child's best interest.
 {¶ 25} The parents also argue that the court should not have considered the guardian ad litem's report in determining best interest, as the guardian's report was not based on an independent investigation. The parents argue that the guardian ad litem neglected to speak independently with the parents, the counselors or the parenting educator, and never observed the child interact with her parents or grandmother.
 {¶ 26} Pursuant to R.C. 2151.281(B)(1), "[t]he court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged abused or neglected child and in any proceeding [involving permanent custody]." A guardian ad litem "shall perform whatever functions are necessary to protect the best interest of the child." R.C. 2151.281(I). "The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest." In re Baby GirlBaxter (1985), 17 Ohio St.3d 229, 232. The trial court determines a guardian ad litem's credibility and the weight to be given to the guardian's report. In re E.C., Butler App. No. CA2006-03-060,2007-Ohio-39.
 {¶ 27} In this case, the guardian ad litem was questioned at the hearing regarding the extent of his involvement in this case. He answered questions from the parents' attorney indicating that he did not visit the parents or grandmother's home, did not observe visitations, or speak independently with the counselors or the parenting instructor. He indicated that his recommendations were based on information from Children Services and attending the *Page 8 
hearings.
 {¶ 28} Other courts considering issues involving the alleged failure of the guardian ad litem to perform his duties have determined that when a parent cannot establish any prejudice arising from the action or inaction of a guardian ad litem, then any potential error is harmless. See e.g. In re J.C, Adams App. No. 07CA833, 2007-Ohio-3781, and cases cited therein.
 {¶ 29} The parents have not indicated any manner in which they were prejudiced by the guardian ad litem's failure to visit with the parents, observe the parents' visits with the child, nor have they indicated any way in which they were prejudiced by the guardian ad litem's failure to speak independently to the counselors or parenting instructor. While other issues were involved, many of the facts in this case were not disputed, and the primary focus of the persons involved was the physical safety of the child and whether the parents or a relative could provide a safe environment. The guardian ad litem's report addresses the issues involved in this determination and the parents have not alleged any manner in which they were prejudiced by the guardian's inaction in the other areas they argue on appeal.
 {¶ 30} In addition, as discussed above, the trial court determines a guardian ad litem's credibility and the weight to be given to his/her report. In this case, counsel for the parents questioned the guardian ad litem and addressed specific questions regarding his investigation and the basis of his report. Accordingly, we find that the trial court did not err in considering the guardian ad litem's report.
 {¶ 31} Finally, the parents and the grandmother argue that there is evidence that placement can be achieved without a grant of permanent custody. Factually, they argue that the evidence shows that they can provide for the child's basic needs. However, as discussed above, the record shows contrary evidence. While the parents completed parenting classes *Page 9 
and counseling, there was still concern expressed by the parenting instructor and the caseworker regarding the parents' ability to carry over what they had learned on a long-term basis, or even from visit to visit. There were also concerns based on the fact that the parents were unable to follow-through on basic parenting skills from visit to visit in a controlled environment. The parenting instructor stated that the parents would need help over the next two to three years to parent the child.
 {¶ 32} In addition, witnesses testified that there is still a major concern because they still do not know who hurt the child. The possibility that the physical abuse may occur again without an admission by the person who caused it and steps to ensure that it does not reoccur was a major concern in reuniting the child with her parents.
 {¶ 33} We find no error in the trial court's determination that granting permanent custody was in the best interest of the children. Accordingly, the parents' first assignment of error is overruled.
 {¶ 34} In their second assignment of error, the parents argue that the grant of permanent custody was a direct violation of their Fifth Amendment right against self-incrimination. They argue that their rights were violated because the case plan required the person(s) responsible for the abuse to admit responsibility for their physical abuse of the child and to do so would subject them to criminal liability. As support for their arguments, the parents cite In re Puckett (Sept. 17, 2001), Butler App. Nos. CA200-11-203,-223; and In re Amanda W. (1997),124 Ohio App.3d 136.
 {¶ 35} In Amanda W., the appellate court determined that the parents' Fifth Amendment rights were violated by a requirement that the father undergo sexual offender counseling that required him to admit that he sexually abused his daughter. In that case, it was clear from the agency and the court's decision that the father's refusal to admit to the *Page 10 
sexual abuse was the cause for the agency's decision to seek permanent custody. In a case involving similar circumstances, this court distinguished Amanda W. on the basis that the father was free to see another counselor but waited to do so until over a year later. In rePuckett.
 {¶ 36} In another case addressing a similar issue, the court distinguished Amanda W. on the basis that there was sufficient credible evidence of the father's sexual abuse from other sources, the father stipulated to the findings of dependency and because the alleged sexual abuse was not the sole factor weighing in favor of terminating the father's parental rights. In re A.D., Summit App. No. 22668,2005-Ohio-5183.
 {¶ 37} We find the facts of the case before us more akin to the factual scenario presented in the case of In re A.D. than Amanda W.
First, there is substantial credible evidence, outside of the failure to admit culpability for the injuries, that the injuries occurred and that one of the four people involved caused the injuries.
 {¶ 38} Factually, this case presents a unique situation. There is no doubt that the child was seriously injured as the fractures are substantiated by medical testimony. Moreover, medical testimony established that the cause of these injuries could only be violent force. It is further undisputed that one of the four individuals caused the injuries, as all four people who had access to the child admit that the four of them are the only possible persons who could have injured the child.
 {¶ 39} Second, like In re A.D., the parents stipulated to the dependency finding in this case, and to the facts alleged in the complaint. As mentioned above, the parents agree that the injuries could only have been caused by one of the four individuals. While agency workers testified that identifying who caused the abuse was a goal from the beginning, the requirement that the responsible party admit the abuse was not formally added to the case *Page 11 
plan until after the December 2005 hearing in which the court determined that a goal other than reunification should be added to the case plan. Any one of the four persons with access to the child could have admitted to causing the abuse, or identified the abuser but all failed to do so and the trial court determined that reunification with the parents was not possible since placing the child back with the parents would be placing her back with the person who caused the injuries.
 {¶ 40} Finally, there is other substantial credible evidence to support the trial court's findings that it was in the child's best interest to grant permanent custody and that the child could not be placed with the parents within a reasonable time. It was the parents' inability to safely parent the child at two months old that initially caused the agency to become involved. The father indicated that the child was burned when he placed the child directly in front of a vaporizer and placed a towel over the child and the vaporizer. Shortly after that time, it was discovered that the child had five fractures and she was removed from the home. Although the parents were willing to undergo services and parenting instruction, there was little long term progress and the concern for the child's safety continued.
 {¶ 41} The child's need for a legally secure placement was also an issue. The child was removed at the age of four months, and at the time of the hearing was two-and-a-half years old. As discussed above, the parenting instructor testified that it would take two or three more years for the parents to be able to take care of the child independently.
 {¶ 42} The parents also argue that the trial court erred in finding that they failed to take a polygraph as requested by the agency. The polygraph was not part of the case plan, but the agency requested that the four individuals who were potentially responsible for the abuse take a polygraph examination. The grandmother and her boyfriend both took, and passed the polygraph. The parents refused to take the polygraph and this fact was mentioned by the *Page 12 
court in its decision. However, the failure to take the polygraph was not the sole reason for the court's determination that permanent custody should be granted, and was just one fact that the court considered.
 {¶ 43} Accordingly, because there is significant evidence supporting the fact that the parents can not safely parent the child, and the decision to grant permanent custody is not based solely on the parents failure to admit to abusing the child, the parents' second assignment of error is overruled.
 {¶ 44} In their final assignment of error, the parents argue that the trial court erred in determining that the agency made reasonable efforts to reunite the child with her parents and to make reasonable case planning and diligent efforts to assist the parents. Much of this argument centers on the requirement that the person responsible admit to the abuse, but the parents also allege other ways in which the agency failed to provide reasonable efforts, such as failing to obtain a home study of the grandmother's residence and allowing them to be released from counseling but find that they did not make progress in counseling.
 {¶ 45} The court made findings that the agency had made reasonable efforts to prevent the removal of the child from the home and to eliminate the continued removal of the child from the home at several different points in this case, including in the decision granting permanent custody. Much of the parents' argument on this issue involves the requirement that the person who harmed the child admit causing the abuse, which has been discussed above. Moreover, completion of the case plan is only one factor for that the court considered and is relevant to the court's determination as it relates to the child's best interest.In re S.N., Summit App. No. 23571, 2007-Ohio-2196.
 {¶ 46} A review of the record supports the trial court's determination that the agency made reasonable efforts. Children Services arranged for psychological assessments, *Page 13 
counseling, parenting classes and other instruction, and provided other services. Although the parents completed these services, there were still concerns regarding their ability to safely parent. The fact that the parents did not benefit long-term or permanently from the services does not negate the fact that the agency made reasonable efforts in providing them. In addition, a home study was not performed on the grandmother's residence as it was determined that she was not a suitable placement, as discussed below in the grandmother's assignment of error. Accordingly, the parents' third assignment of error is overruled.
 {¶ 47} The grandmother's sole assignment of error contends that the court erred in not considering her as a placement option before granting permanent custody. The grandmother was considered as a placement option for the child. However, agency workers identified several areas of concern that substantiated the court's decision that she was not a suitable placement option.
 {¶ 48} First, the grandmother is one of the four persons who had access to the child and could have potentially caused the abuse. Second, the close proximity of the grandmother to the parents is a concern. Evidence was presented that she lives only 60 feet away from the parents and that both the parents and her boyfriend would have access to the child. According to the caseworker the grandmother indicated when questioned regarding her close proximity to the parents that she would not be willing to move away from the parents. Finally, evidence was presented that the lives of the four individuals are "emeshed" into what was described as an "enabling relationship." The caseworker testified that the grandmother performs fundamental necessities for the parents, such as buying them things for their basic care, transportation, and attending medical appointments with them and that the extent of this involvement in their lives is unhealthy. The level of this relationship also caused concerns in that the grandmother did not recognize that her daughter may have been *Page 14 
responsible for the abuse and also concerns regarding the grandmother's ability to limit the parents' access to the child. Accordingly, we find no error in the trial court's determination that the grandmother was not a suitable placement option. The grandmother's sole assignment of error is overruled.
 {¶ 49} Judgment affirmed.
 YOUNG, P.J. and BRESSLER, J., concur. *Page 1