[Cite as *In re E.W.*, 2012-Ohio-308.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

IN THE MATTER OF:

                                   CASE NO.  14-10-31

    E. W.,

ADJUDICATED DEPENDENT CHILD,

    [KRISTIE RISNER,                     O P I N I O N
    APPELLANT].

Appeal from Union County Common Pleas Court
Trial Court No. 20830064

**Judgment Affirmed**

**Date of Decision:   January 30, 2012**

APPEARANCES:

    *Alison Boggs*  for Appellant

    *Perry Parsons*  for Appellee, James Wolford

    *Rick Rodger*  for Appellee, Union Co. Job & Family Services

**PRESTON, J.**

{¶1} Mother-appellant, Kris Risner (hereinafter "Risner"), appeals the judgment of the Union County Court of Common Pleas awarding custody of the parties' minor child, E.W., to father-appellee, James Wolford (hereinafter "Wolford"). For the reasons that follow, we affirm.

{¶2} On October 14, 2008, the Union County Department of Job and Family Services (hereinafter "UCDJFS") filed a complaint alleging that E.W. was a dependent child as defined in R.C. 2151.04(a), (b), and (c). (R. at 5). E.W. was placed with her maternal grandmother and remained in UCDJFS' temporary custody during the pendency of the case. (R. at 22-24, 219-21).

{¶3} On December 12, 2008, an adjudicatory hearing was held wherein E.W. was found to be a dependent child based upon the parties' admissions. (R. at 186). That same day, Wolford filed a motion for custody of E.W. as a potential disposition to the case. (R. at 185). On December 19, 2008, Risner filed a motion for custody of E.W. as a potential disposition to the case. (R. at 202).

{¶4} On January 14, 2009, the matter proceeded to disposition; however, prior to the commencement of the hearing, Risner made an oral motion to hold the parties' custody motions in abeyance while she was given an opportunity to continue the case plan. (R. at 206, 219); (Jan. 19, 2009 Tr. at 6-7). The magistrate ordered that: UCDJFS be granted temporary legal custody of E.W.; E.W. remain

with her maternal grandmother as a kinship placement; the case plan be continued as amended; and the matter be reviewed on May 14th and October 9, 2009. (R. at 220-21). The trial court adopted the magistrate's decision on March 12, 2009. (R. at 239).

{¶5} On April 9, 2009, UCDJFS filed a motion to modify disposition, recommending that E.W. be returned to Risner with the agency retaining protective supervision. (R. at 288-90).

{¶6} On April 10, 2009, the magistrate held a hearing on the parties' motions for custody and UCDJFS' motion to modify disposition and/or terminate the agency's involvement. (Apr. 10, 2009 Tr. at 4). At the conclusion of the hearing, the magistrate awarded Wolford custody of E.W. and terminated UCDJFS' involvement in the case. (Id. at 146-48); (R. at 322-25). The magistrate issued her decision on May 11, 2009. (R. at 322). The trial court adopted the magistrate's decision on May 12, 2009. (R. at 331).

{¶7} On May 26, 2009, Risner filed a notice of filing objections and motion for an extension of time for filing objections after the completion of a transcript, which the trial court granted. (R. at 339, 344-45). On June 4, 2009, Risner filed her objections to the magistrate's decision, but the trial court overruled the objections on October 6, 2009. (R. at 346, 397-411).

**{¶8}** On December 17, 2009, Risner filed a notice of delayed appeal, which was assigned appellate case no. 14-09-43. (R. at 436). On January 7, 2010, this Court denied the motion for delayed appeal finding that the order appealed from was not a final appealable order since the trial court had not addressed the issue of child support. (R. at 465).

**{¶9}** On October 6, 2010, the magistrate held a hearing to determine the parties' child support obligations and entered her decision the following day. (R. at 491-94). The trial court adopted the magistrate's decision that same day. (R. at 504).[1]

**{¶10}** On November 3, 2010, Risner filed a notice of appeal. (R. at 510). Risner now appeals raising three assignments of error for our review.

## ASSIGNMENT OF ERROR NO. I

**AFTER HEARING ALL THE EVIDENCE, THE TRIAL COURT ABUSED ITS DISCRETION BY IGNORING THE FACTORS LISTED IN OHIO REVISED CODE 3109.04(F)(1) AND GRANTING CUSTODY OF THE MINOR CHILD TO HER FATHER, JAMES WOLFORD.**

**{¶11}** In her first assignment of error, Risner argues that the trial court abused its discretion by failing to appropriately weigh the factors in R.C.

---

[1] Although not raised by the parties herein, we note that the magistrate's October 7, 2010 decision ordering child support erroneously indicates that E.W. will be emancipated on May 31, 20**10**. (R. at 493). The record reflects that E.W. will be emancipated as of May 31, 20**12**. (July 6, 2010 Tr. at 11).

3109.04(F)(1), and the trial court's custody decision was against the manifest weight of the evidence.

**{¶12}** Initially, we note that Wolford failed to file an appellee's brief. Under these circumstances, App.R. 18(C) provides that: "* * * in determining the appeal, the court may accept the appellant's statement of facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." Nevertheless, a reversal is not warranted herein.

**{¶13}** The trial court's decision when allocating parental rights is guided by the best interest of the child. R.C. 3109.04(B)(1). To determine the best interest of the child, the trial court must consider all the relevant factors, including, but not limited to:

> **(a) The wishes of the child's parents regarding the child's care;**
>
> **(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**
>
> **(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**
>
> **(d) The child's adjustment to the child's home, school, and community;**
>
> **(e) The mental and physical health of all persons involved in the situation;**

**(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

R.C. 3109.04(F)(1).

**{¶14}** A trial court has broad discretion in allocating parental rights, and its decision will not be disturbed on appeal absent an abuse of discretion. *Shaffer v. Shaffer*, 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶ 10, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997); *Siefker v. Siefker*, 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶ 4.  An abuse of discretion is more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).  Furthermore, a reviewing court will not reverse an award of custody that is supported by a substantial amount of competent, credible evidence as being against the weight of the evidence. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990).

**{¶15}** Nicolas Deagle, the UCDJFS case worker assigned since October 2008, testified that the agency became involved when it "received referrals with regards to [Risner] having issues with her medications, having fallen down the steps, and possible suicide ideation." (Apr. 10, 2009 Tr. at 7).  Deagle also

indicated that an altercation occurred between Risner and E.W. leading up to the filing of the complaint. (*Id*. at 7-8). Deagle testified that the agency requested that Risner be involved with "FFT" to address the ongoing disputes between E.W. and her. (*Id*. at 9). Deagle testified that the agency monitored Risner's prescription drug use, and that the number of pills he found in the bottles did not match the prescribed number. (*Id*.). Risner explained to Deagle that the discrepancy could have occurred if she took the prescribed medication for anxiety earlier in the day, depending upon the amount of her anxiety that day. (*Id*.). Deagle testified that Risner was subjected to one random drug test, which tested positive for barbiturates and opiates; however, Risner also missed two other drug test appointments, which the agency classifies as positive tests. (*Id*. at 10-11). Consequently, of the four total drug tests, Risner failed three and the results for the fourth test were not yet available. (*Id*. at 13). Deagle testified that Risner's case plan required her to attend counseling, but Risner missed eight of eleven sessions. (*Id*.). Deagle further testified that Risner missed "less than probably five" visits with E.W. (*Id*. at 14). Deagle testified that Risner has never provided her prescriptions to account for her positive drug test result. (*Id*. at 14-15). When the agency attempted to contact Risner's physicians to find out about her prescriptions, the physicians indicated that Risner was no longer a patient because she exhibited drug-seeking behaviors. (*Id*. at 15). Deagle testified that Risner has

not been prescribed any medications since January (2009), but he could not testify whether or not Risner is still taking the medications. (*Id*. at 15-16).

{¶16} In addition, according to Deagle, E.W. is failing or getting D's in all of her classes, except choir and gym, and has had eighteen tardy slips since the start of the school year. (*Id*. at 16). Deagle could not testify regarding Wolford's home since no one had inspected the home yet. (*Id*. at 16-17). Deagle testified that Lora Diggs, who was working with Risner from FFT, reported that Risner was addicted to prescription medications. (*Id*. at 17). Deagle testified that Risner had problems taking prescription Dilaudid, and that Risner has been much better since she is no longer taking that medication. (*Id*. at 17-18). Deagle testified that E.W., who originally voiced concerns over her mother's prescription drug use, now reports that her mother is doing much better. (*Id*. at 18).

{¶17} Deagle testified that E.W. had a prior case, which was terminated in September 2008, approximately one month prior to the new case being filed. (*Id*. at 19). Deagle testified that the agency was satisfied with Risner's efforts in the previous case leading up to its termination, though Deagle acknowledged that the agency became involved again just one month later. (*Id*.). Deagle testified that he felt things would be different this time because E.W. shared that she was not being truthful with him during the last case about her mom's medication usage. (*Id*. at 20). Deagle testified that the previous case was instituted because of an incident

-9-

of domestic violence between Risner and her former husband. (*Id*. at 20). Deagle testified that Risner had a positive drug test in the previous case, but that was cleared up by Risner's prescription medications. (*Id*.).

**{¶18}** On cross-examination, Deagle testified that he believes that Risner has been forthcoming with him during this case, because she wants her child returned. (*Id*. at 22). Deagle testified that Risner has a primary physician, which could account for the prescription medications that she is currently taking. (*Id*. at 23-24). Deagle testified that Diggs indicated that the family was making good progress. (*Id*. at 25). Deagle testified that Risner missed some of the counseling sessions because she was sick, and Diggs cancelled an appointment due to illness as well. (*Id*. at 26). Deagle testified that E.W.'s school grades were better last year when she lived with Risner than this year when she was living with her maternal grandmother. (*Id*. at 27-28). Likewise, most of E.W.'s tardies have occurred when she resided with her maternal grandmother. (*Id*. at 28). Deagle testified that Risner makes sure to attend parent-teacher conferences and is not happy with E.W.'s academic performance or number of tardies. (*Id*.). Deagle testified that Wolford was not pleased with E.W.'s academic performance either. (*Id*. at 29).

**{¶19}** Deagle testified that the agency filed a motion to modify disposition ending its temporary custody of E.W. and returning E.W. to Risner. (*Id*. at 30). Deagle testified that the case plan would still be in effect, requiring Risner to

attend counseling and submit to random drug tests. (*Id*. at 30-31). Deagle testified that the agency would check-up on Risner at least once a month since E.W. would remain in the agency's protective supervision. (*Id*. at 31). When asked if Risner's compliance has been "substantial," Deagle testified "I would say that she's trying." (*Id*.).

{¶20} Deagle testified that the agency would terminate its case plan if the trial court gave Wolford custody of E.W. since Wolford lives in Kentucky. (*Id*. at 35). When asked if he had any concerns with Wolford, Deagle testified, "I have nothing with Mr. Wolford." (*Id*.). When asked if he had concerns with Risner, Deagle testified, "[w]e are addressing issues in the case plan. Yes." (*Id*.). Concerning Wolford, Deagle testified that Wolford completed a drug and alcohol assessment in the previous case, and that Wolford completed the six classes he was required to attend. (*Id*. at 42). Deagle testified concerning Wolford with respect to the current case plan as follows:

> **Q: * * * can you explain why you had no services requested of Mr. Wolford in the case file.**
> **A: With his case plan, Mr. Wolford had addressed the drug and alcohol concern in our previous case plan. The Agency has never received any recent concerns regarding Mr. Wolford's ability to parent, Mr. Wolford's use of any medication other than something that's prescribed due to his back injury. There was -- there was no need -- or there was no -- nothing that warranted any kind of services put in place for him at this time.**
> **Q: So is it fair to say you had no concerns over his role that he would take in this case?**

**A: Correct.**

(*Id*. at 42-43).

{¶21} Wolford testified that he has lived in Gracen, Kentucky for about two and a half years. (*Id*. at 44). Wolford testified that he lives with his wife, Margaret Ann, who he married January 5, 2009. (*Id*.). Wolford testified that Margaret has visitation with her two sons, ages thirteen and seventeen, from a previous marriage. (*Id*. at 44-45). Wolford testified that E.W. does not see Margaret's sons very often when she visits since the boys chose to live with their father. (*Id*. at 45). Wolford testified that his visitation with E.W. was every other weekend, every other holiday, and six weeks in the summer. (*Id*.). Wolford testified that he exercised his visitation rights with E.W. right after his first divorce from Risner around 1995 or 1996 and has been seeing E.W. consistently since he has moved to Kentucky about three years ago. (*Id*. at 46). Wolford testified that his visitations with E.W. are "pretty good," though he admitted he was learning new things everyday as the father of a teenage girl. (*Id*. at 47). Wolford testified that E.W. and he watch T.V. together, play the Wii together, ride four wheelers together, and visit family together. (*Id*.). Wolford described E.W.'s relationship with Margaret as "cool" and testified that they get along "as best as they can * * * they don't argue." (*Id*.). Wolford testified that E.W. has twenty cousins that live in close proximity to their home in Kentucky. (*Id*.).

{¶22} Concerning his previous drug and alcohol assessment, Wolford testified that he successfully completed five counseling sessions as required by the agency. (*Id*. at 48). Wolford denied abusing drugs or alcohol but testified that he is currently prescribed Percocet for his recent back surgery. (*Id*.). Wolford testified that he only takes one ten-milligram pill per day, even though he is allowed two ten-milligram pills per day, because he is a recovering alcoholic and addict. (*Id*.). Wolford testified that he had been employed at W.A. Kendall trimming trees around power lines for almost two years until he injured his back on the job. (*Id*. at 49). Wolford testified that he is currently drawing workers' compensation benefits and must report to the doctor after six weeks of physical therapy. (*Id*.). Wolford testified that Margaret does not work since she is pregnant but will return to work after their child is born. (*Id*. at 49-50). Wolford testified that he is currently paying child support, though he has not been able to pay the full amount due to his injury and decreased income. (*Id*. at 50). Wolford testified that E.W. has a room and bed in his home when she visits, and that he is able to continue to support E.W. (*Id*.). Wolford testified that he is asking the trial court to grant him custody of E.W. since things are not going well for E.W. where she is living. (*Id*. at 51). Wolford testified that E.W. would attend school at East Carter High School, where his sister works as a teacher's aide. (*Id*.). Wolford expressed

his concern that Risner would continue to manipulate the agency if she was given custody. (*Id*. at 52).

**{¶23}** On cross-examination, Wolford testified that he lives in a two-bedroom mobile home. (*Id*. at 52). Wolford testified that Margaret is due in May (2009), and that her sons stay at the mobile home one night per week. (*Id*. at 53). Wolford testified that the bedrooms do not have doors, and that they use the bathroom to change clothes. (*Id*. at 53). Wolford testified that Gracen, Kentucky is about three and a half hours away from Marysville, Ohio. (*Id*. at 54). Wolford testified that his stepfather drove him to court since he does not have a driver's license because he has a warrant out for a probation violation for failing to pay a fine. (*Id*. at 55). Wolford testified that he relies upon family members for transportation. (Id. at 56). Wolford testified that he did not know the ratings of the schools in Gracen, Kentucky. (*Id*. at 56-57). Wolford was not sure how much child support he paid when he was collecting workers' compensation benefits, nor could Wolford state the amount of his child support arrearage. (*Id*. at 57-58). Wolford subsequently acknowledged that his child support balance was $20,368.36, based upon records from Madison County, Ohio Department of Job and Family Services. (*Id*. at 59). Wolford testified that he was married to and divorced from Risner three times, and the last divorce was in 2005. (*Id*. at 60). Wolford later testified that court records indicated that his last divorce was in

1999, when E.W. was five years old. (*Id*. at 60-61). Wolford testified that he exercised his visitation rights until 2003, when E.W. was almost ten or eleven years old, until Risner would no longer allow him to pick up E.W. (*Id*. at 63). Wolford testified that he tried to continue having a relationship with E.W. from 2003 to 2007 by contacting her on the phone since he was out of state. (*Id*.). However, Wolford testified that Risner would answer the phone and say that E.W. did not live there. (*Id*.). Wolford testified that he did not see E.W. for a year and a half, but did send birthday cards and sent Risner money. (*Id*. at 64). Wolford testified that his mother tried to visit E.W. as best as she could, but Risner threatened to stop her visitation if she allowed him to talk to E.W. (*Id*. at 65). Wolford testified that he had not provided E.W. with health insurance as ordered since it would cost him half of his salary. (*Id*. at 66). Wolford testified that Risner called the police on him eleven times when they were married for alleged domestic violence, but he only pled guilty to domestic violence once. (*Id*. at 69-71). Wolford testified that E.W. was close to several, but not all, of her cousins in Kentucky. (*Id*. at 72). When asked how long he has been a recovering alcoholic, Wolford answered, "[i]t's been 24 hours today. But I really couldn't tell you. I try not to set deadlines or dates so that I won't set myself up for failure. I know it's been two and a half years at least." (*Id*. at 73).

**{¶24}** When asked where all the people would sleep in the mobile home, Wolford testified that E.W. would have her own bedroom; Margaret's boys would sleep in the living room on an air mattress or in a recliner; and the newborn would sleep in his wife and his bedroom until he is at least three years old. (*Id*. at 74). Wolford testified that E.W. went to school in Kentucky, and that it went "pretty good." (*Id*. at 75). Wolford testified that E.W. dresses different than some of the children down there; specifically, E.W. dresses more provocatively than his sister's children since his sister is a Christian. (*Id*. at 76). When asked if E.W. is an outsider, Wolford testified, "[n]o. They all run and jump on the trampoline and she's got a tendency to lean towards younger kids. And she pals up with them and takes care of them and teaches them games, all kinds of stuff down there. It's amazing and – what she does with them." (*Id*.).

**{¶25}** Next, Risner testified that Wolford left E.W. and her four days after E.W. was born. (*Id*. at 78). Risner testified that Wolford was a drunk and drug addict who would not work. (*Id*.). According to Risner, Wolford came back six months later and told her that he had changed, so they were married again, but she left him again when he kicked her, her eight-year-old son, and two-year-old daughter because they were interfering with his drinking. (*Id*.). Risner testified that she married him again the third time because he, again, stated he had changed, but she made him leave the house after three days and filed for the third and final

divorce. (*Id.*). Risner testified that their family unit was dysfunctional, and Wolford was very jealous of and mean towards her son. (*Id.* at 79-80). Risner testified that Wolford failed to pay child support regularly until October 2007. (*Id.* at 80). Risner testified that, since 1999, Wolford has failed to provide E.W. health insurance, and he has never given her money for school clothes. (*Id.* at 81). Risner testified that Wolford's visitation with E.W. was sporadic from 1999 to 2003, and Wolford had absolutely no contact with E.W. from 2003 to 2007. (*Id.* at 82). According to Risner, Wolford's mother lived ten to fifteen minutes away from E.W. but only called to visit with E.W. every six months. (*Id.*). Risner testified that Wolford began having regular contact with E.W. in October 2007 when the current case started. (*Id.* at 83). Risner testified that Wolford does not allow her to contact E.W. when she is visiting him. (*Id.* at 85). Wolford only allows her to talk to E.W. for ten minutes while she is visiting him, and, on one occasion, Wolford yelled at E.W. for continuing to talk to her on the phone. (*Id.*). Risner testified that she lives in a three-bedroom apartment with E.W., and her son stays at the apartment sometimes. (*Id.* at 86). Risner testified that E.W. is very close with her son. (*Id.*). Risner testified that she supports herself and E.W. through Social Security disability payments, and that her son supports himself through working. (*Id.* at 86-87). Risner testified that FFT is going wonderful, and Diggs is a Godsend. (*Id.* at 88). According to Risner, Diggs taught E.W. and her how to be

more open, honest, and respectful to each other. (*Id*.). Risner testified that E.W. and she go to the park together, watch movies together, play video games together, and shop together. (*Id*.). Risner testified that E.W.'s friends, grandpa and grandma, aunts, uncle, and cousins live in Marysville. (*Id*. at 89). Risner testified that E.W. told her she wanted to come home. (*Id*. at 90).

{¶26} E.W. is having difficulty adjusting to high school, according to Risner. (*Id*.). E.W.'s grades in September and October "weren't too bad" but then they started to drop after E.W. moved in with her grandmother. (*Id*.). Risner further testified that, unlike her mother, she would check to see if E.W. completed her homework and would go over it if E.W. had questions. (*Id*. at 90-91). Risner testified that E.W.'s eighteen tardies all occurred after E.W. moved in with her grandmother, and that she was unaware of the tardies. (*Id*. at 91). E.W. has lived in Marysville since 1995. (*Id*.). Risner testified that E.W. was "very adamant" about not wanting to live in Kentucky, though E.W. enjoys visiting her father every other weekend. (*Id*. at 92). Risner testified that E.W. does not want to move away from her family and friends in Marysville, and that E.W. does not feel comfortable in Kentucky with its different culture. (*Id*.). Risner also testified that E.W. told her that she does not get along with Wolford's new wife, and she is concerned with E.W. having no bedroom door. (*Id*. at 93). Risner also expressed concern with E.W. having space for her clothes since the closet of the bedroom

where E.W. sleeps when she visits Wolford is full of Margaret's clothes. (*Id*. at 94). Risner testified that E.W. needs to have Wolford in her life, but she believes that she should have custody of E.W. since E.W. has been with her all of her life. (*Id*. at 95).

{¶27} On cross-examination, Risner denied that the agency was involved due to her prescription drug abuse. (*Id*. at 97). Risner admitted that one of her doctors refuses to treat her because of her drug seeking behavior. (*Id*. at 99). Risner testified that she was prescribed Cymbalta for depression; Limlamictal for bipolar disorder; Atenolo for mitral valve prolapse; Synthroid for hypothyroidism; Xanax for anxiety; Nexium for acid reflux; and Clonopin for insomnia. (*Id*. at 102-104). Risner testified that she was also taking Fiornal and Dilaudid until her incident with her daughter and then she stopped taking these medications. (*Id*. at 104). Risner admitted that she had been in two abusive marriages. (*Id*. at 109-111). Risner testified that she would like Wolford to have visitation with E.W. every other weekend and six weeks in the summer. (*Id*. at 111). Risner testified that Wolford was not telling the truth when he stated that he tried calling E.W. from 2003 to 2007. (*Id*. at 113).

{¶28} Richard Mickley, Esq., the appointed guardian ad litem ("GAL"), testified that he conducted an investigation, was present for E.W.'s in-camera interview, and talked with the parties involved in the case. (*Id*. at 121). Mickley

testified that, after listening to the testimony at the hearing, he would recommend that E.W. be placed with Wolford, even though E.W. would rather stay in Marysville. (*Id*. at 122). Mickley testified that one of the reasons for his recommendation is that the agency still has concerns with Risner, while it has no concerns with Wolford, and E.W. enjoys visitations with Wolford. (*Id*.). Mickley testified that he was not sure what Deagle would say about Wolford until the hearing, and that he has never been to Wolford's home. (*Id*. at 123). Mickley testified that his decision was based upon balancing the information he had, not "an absence of knowledge." (*Id*.). Mickley denied that E.W. was "adamant" about staying in Marysville, though he admitted that E.W. did not want to leave Marysville because she was comfortable living there. (*Id*. at 124).

{¶29} After hearing all the evidence and a brief recess, the magistrate decided that it was in E.W.'s best interest to grant Wolford custody. (*Id*. at 133, 146). In reaching her decision, the magistrate analyzed all of the R.C. 3109.04(F)(1) factors upon the record. (*Id*. at 133-46). Like the magistrate, the trial court also extensively reviewed the R.C. 3109.04(F)(1) factors in light of the evidence presented at the hearing. (Oct. 6, 2009 JE, R. at 397). In reaching its decision, the trial court noted that, although it had concerns about both parents, "the most persuasive evidence in this case was that Ms. Risner has failed to comply with the case plan regarding her substance abuse and mental health

issues." (R. at 410). The trial court concluded that "if [E.W.] were reunified with Ms. Risner, the family would be back before this Court again in a very short time." (*Id.*).

{¶30} Upon review of the record, we cannot conclude that the trial court failed to adequately weigh the R.C. 3109.04(F)(1) factors as Risner asserts. A simple reading of the transcript and the entries herein belie such an assertion. Risner points to the fact that the magistrate merely mentioned that Wolford was living in "Kentucky" without fully analyzing the significance of that factor. However, the trial court is not required to *address* all the R.C. 3109.04(F)(1) factors—only *consider* them—which the trial court clearly did in this case. *Lucas v. Lucas*, 3d Dist. No. 11-93-6, at *3 (Mar. 25, 1994); *Brammer v. Meachem*, 3d Dist. No. 9-10-43, 2011-Ohio-519, ¶ 30, citations omitted. Essentially, Risner asks this Court to reweigh the evidence and reach a different conclusion than the trial court, which we are not permitted nor inclined to do. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140; *Hall v. Hall*, 3d Dist. No. 6-10-11, 2010-Ohio-4818, ¶ 26 (weight to be given to the evidence is primarily reserved to the trier of fact). Besides that, much of the evidence supporting Risner's assertions on appeal was gleaned from *her* own testimony at the hearing, and the magistrate questioned Risner's credibility. (Apr. 10, 2009 Tr. at 143). Furthermore, the record contains no evidence of the magistrate or trial court being biased against Risner as she

asserts. Certainly the magistrate expressed her frustration with Risner's failure to attend her counseling and drug screening appointments as required under the case plan, but that does not equate to bias. (*Id*. at 141).

{¶31} Finally, we find that the trial court's custody determination was supported by substantial competent, credible evidence and was, therefore, not against the manifest weight of the evidence. *Bechtol*, 49 Ohio St.3d at 23, 550 N.E.2d 178. The record, taken as a whole, demonstrated that both parents had some issues, but Wolford's issues were past issues, not present issues like Risner's. The record also demonstrated that Risner failed to complete the case plan objectives, even when the magistrate continued the case to provide Risner with more time to do so. (Apr. 10, 2009 Tr. at 143). Given Risner's failure to adequately address her problems, the trial court was concerned that E.W. would continue to be involved in further court proceedings, which was not in E.W.'s best interest. (R. at 410). Under these circumstances, we cannot find that the trial court's custody determination was against the manifest weight of the evidence.

{¶32} Risner's first assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT PERMITTED THE GUARDIAN AD LITEM TO TESTIFY OR EXPRESS AN OPINION WHEN HE HAD NOT CONDUCTED A FURTHER INVESTIGATION OR SUBMIT A SUPPLEMENTAL**

**REPORT AFTER THE INITIAL REPORT BEEN FILED TWO YEARS EARLIER IN A PRIOR CASE.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED WHEN IT FAILED TO APPOINT AN ATTORNEY TO REPRESENT THE MINOR CHILD IN THE HEARING, IN ADDITION TO HER GUARDIAN AD LITEM, WHEN IT WAS CLEAR TO THE COURT AFTER THE IN CAMERA INTERVIEW THAT WHAT SHE WANTED WAS OPPOSITE WHAT THE GUARDIAN AD LITEM BELIEVED WAS IN HER BEST INTEREST.**

**{¶33}** In her second assignment of error, Risner argues that the trial court erred in allowing the GAL to offer a recommendation when he did not submit a report prior to the dispositional hearing or the final custody hearing. In her third assignment of error, Risner argues that the trial court erred by failing to appoint an attorney separate from the GAL as required by Juv.R. 4(C)(2) and R.C. 2151.281(H).

**{¶34}** The procedural posture of this case is important for our analysis of these assignments of error. Although this case originated as a dependency action, the parties filed custody motions during the proceedings. (R. at 22-24, 185, 202). The custody motions were held in abeyance until after disposition in order to provide Risner with more time to complete her case plan. (R. at 206, 219); (Jan. 19, 2009 Tr. at 6-7). The dependency action was resolved by a disposition entered March 12, 2009. (R. at 239). Thereafter, on April 10, 2009, the trial court held a

hearing on the custody motions and UCDJFS' motion to modify disposition and/or terminate its involvement. (R. at 288-290); (Apr. 10, 2009 Tr. at 4). At that point, the trial court was proceeding on a motion to modify parental rights and responsibilities under Revised Code Chapter 3109. (Apr. 10, 2009 Tr. at 135).

**{¶35}** R.C. 2151.281 sets forth the general provisions governing GALs and includes, in pertinent part, that the GAL "shall file any motions and other court papers that are in the best interest of the child." R.C. 2151.281(I). Sup.R. 48(F)(2) specifically provides that, in domestic relations proceedings involving the allocation of parental rights and responsibilities, the GAL's final report "shall be filed with the court no less than seven days before the final hearing unless the due date is extended by the court." However, R.C. 3109.04(C), the statute under which the trial court was awarding custody herein, provides:

> **Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, *upon written request*.**

A GAL is an investigator for the court within the meaning of R.C. 3109.04(C). *In re Sherman*, 3d Dist. Nos. 05-04-47, 05-04-48, 05-04-49, 2005-Ohio-5888, ¶ 28; *Webb v. Lane*, 4th Dist. No. 99CA12, at *2 (Mar. 15, 2000); *In re A.L.*, 6th Dist.

-24-

No. L-10-1355, 2011-Ohio-2569, ¶ 34; *Bates-Brown v. Brown*, 11th Dist. No. 2006-T-0089, 2007-Ohio-5203, ¶ 36.

**{¶36}** Risner's arguments lack merit. As an initial matter, Risner never objected to the magistrate's decision for the GAL's failure to file a report and testify at the hearing, and as such, has waived all but plain error herein. (R. at 346); Juv.R. 40(D)(3)(b)(iv); *In re D.N.*, 4th Dist. No. 11CA3213, 2011-Ohio-3395, ¶ 44. Risner also never filed a written request for the GAL's report as required under R.C. 3109.04(C), and therefore, has waived all but plain error on that basis as well. *See Brown*, 2007-Ohio-5203, at ¶ 27, citing *Wilburn v. Wilburn*, 169 Ohio App.3d 415, 2006-Ohio-5820, 863 N.E.2d 204, ¶¶ 32-33. Aside from that, Risner never objected to the GAL testifying and, in fact, cross-examined the GAL at the hearing. (Apr. 10, 2009 Tr. at 121-24). Furthermore, Risner has not demonstrated how she was prejudiced by the GAL's failure to file a written report or the GAL's testimony. "A number of courts have determined that when a parent cannot establish any prejudice arising from the action or non-action of a guardian ad litem, then any potential error constitutes harmless error." *In re J.C.*, 4th Dist. No. 07CA833, 2007-Ohio-3781, ¶ 13, citing *In re Sanders*, 11th Dist. No. 2004 AP 08 0057, 2004-Ohio-5878; *In re Ridenour*, 11th Dist. Nos. 2003-L-146, 2003-L-147, and 2003-L-148, 2004-Ohio-1958; *In re Schupbach*, 11th Dist. No. 2000AP010005 (July 6, 200); *In re Malone*, 4th Dist. No. 93CA2165 (May 11,

-25-

1994); *In re Doe*, 6th Dist. No. L-92-296 (Sept. 17, 1993). In fact, as Risner points out, the trial court corrected the GAL's characterization of E.W.'s in-camera interview but, nevertheless, awarded custody to Wolford. (Apr. 10, 2009 Tr. at 137, 146). Since the trial court was aware of the GAL's investigation (or lack thereof as the case may be) and subjected the GAL's testimony to its independent review, we cannot find plain error in this case. (*Id.* at 121-124, 137).

**{¶37}** Next, Risner argues that the trial court erred by failing to appoint E.W. an attorney separate from the GAL after the in-camera interview when it became obvious that the GAL's position was contrary to E.W.'s desire to live with Risner. We disagree.

**{¶38}** R.C. 2151.281(H) provides, in pertinent part, that "*if* a person is serving as guardian ad litem *and counsel* for a child and either that person or the court finds that a conflict may exist between the person's roles as guardian ad litem *and as counsel*, the court shall relieve the person of duties as guardian ad litem and appoint someone else as guardian ad litem for the child." (Emphasis added). *See also* Juv.R. 4(C)(2).

**{¶39}** Initially, we again note that our review is limited to plain error, because Risner never objected to the magistrate's decision on this basis and never raised this issue in the trial court. (R. at 346); Juv.R. 40(D)(3)(b)(iv); *In re D.N.*, 2011-Ohio-3395, at ¶ 44; *In re T.E.*, 9th Dist. No. 22835, 2006-Ohio-254, ¶ 7,

citing *In re K.H.*, 9th Dist. No. 22765, 2005-Ohio-6323, ¶ 41. *See also In re B.B.*, 9th Dist. No. 21447, 2003-Ohio-3314, ¶ 7; *In re Graham*, 4th Dist. No. 01CA57, 2002-Ohio-4411, ¶¶ 31-33; *In re Brittany T.*, 6th Dist. No. L-01-1369 (Dec. 21, 2001). Risner cannot demonstrate plain error here. To begin with, Juv.R. 4(C)(2) and R.C. 2151.281(H) have no application here because Mickley was not appointed as both E.W.'s attorney and GAL but only as E.W.'s GAL, and therefore, no conflict of interest could exist. (R. at 10, 23, 26); *In re A.S.*, 4th Dist. No. 07CA40, 2008-Ohio-3443, ¶ 31. *Even if* Juv.R. 4(C)(2) and R.C. 2151.281(H) were applicable, it was unclear that the GAL's recommendation was going to be contrary to E.W.'s wishes at the time of the in-camera interview as Risner asserts. In fact, the GAL testified that his final recommendation was not solidified until hearing the evidence at the custody hearing. (Apr. 10, 2009 Tr. at 122-123). And finally, we are not persuaded that the result of the proceeding would have been different if E.W. was appointed separate counsel. The trial court was well aware of E.W.'s "adamant" desire to live with Risner when rendering its decision. (*Id.* at 137); (Oct. 6, 2009 JE, R. at 402). Under these circumstances, we cannot find that the trial court committed plain error by failing to appoint E.W. separate counsel.

{¶40} For all these reasons, Risner's second and third assignments of error are, therefore, overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jlr**