**[Cite as *Dobie v. Dobie*, 2022-Ohio-237.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

DUSTIN L. DOBIE,

      PLAINTIFF-APPELLEE,                    CASE NO.  2-21-09

      v.

MARIA A. DOBIE, N.K.A. COOL,           O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Domestic Relations Division
Trial Court No. 2020 DR 0035

Judgment Affirmed

Date of Decision:   January 31, 2022

APPEARANCES:

    *Lisa A. Miller* for Appellant

    *Rob C. Wiesenmayer, II* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Maria Dobie, n.k.a. Cool, appeals the June 4, 2021 judgment of the Auglaize County Court of Common Pleas, Domestic Relations Division, granting her and plaintiff-appellee, Dustin Dobie, a divorce and allocating parental rights and responsibilities of the parties' two minor children. For the reasons that follow, we affirm.

## I. Facts & Procedural History

{¶2} Maria and Dustin were married on July 12, 2014. Two children, B.D. and D.D., were born as issue of the marriage. Maria and Dustin's marriage began to founder in the summer of 2019. In 2020, Maria moved out of the marital residence in Wapakoneta, Ohio and relocated to Findlay, Ohio.

{¶3} On May 8, 2020, Dustin filed a complaint for divorce in the trial court. Dustin also filed a motion for shared parenting, which included a proposed shared parenting plan. On May 20, 2020, Maria filed an answer to Dustin's complaint.

{¶4} On May 28, 2020, the trial court issued temporary orders designating Maria as the temporary residential parent and legal custodian of B.D. and D.D. Dustin was granted visitation with B.D. and D.D.

{¶5} On June 24, 2020, Dustin filed a motion requesting that a guardian ad litem ("GAL") be appointed for B.D. and D.D. That same day, the trial court granted Dustin's motion and appointed a GAL.

{¶6} On August 11, 2020, Dustin filed a motion requesting, in part, that the trial court issue an order allowing the children to attend school in Wapakoneta. Dustin claimed such an order was necessary because he and Maria were "in conflict regarding whether the children should attend school in the Wapakoneta school district or the Findlay school district." On August 13, 2020, Maria filed a response to Dustin's motion, in which she asked the court to allow her to place B.D. and D.D. in Findlay-area schools for the 2020-2021 school year. On August 14, 2020, the trial court denied Dustin's motion, finding that because Maria "was named the temporary residential parent, the children should be enrolled in the school district of her residence."

{¶7} On October 21, 2020, the GAL filed his report with the trial court. Counsel and the parties were afforded the opportunity to review the report in advance of and in preparation for the final hearing.

{¶8} A final hearing on the divorce was conducted on May 5 and May 14, 2021. By the time of the final hearing, Maria and Dustin had reached an agreement with respect to grounds for divorce, division of property, and debt. However, Maria and Dustin's disagreement over the proper school district for B.D. and D.D. persisted.

{¶9} At the final hearing, Maria and Dustin each testified regarding their preferred choice of school district for B.D. and D.D. In addition, the GAL's report

was admitted as evidence. As relevant to this appeal, the report set forth the GAL's recommendation that "the children attend school in the Wapakoneta school district" in order to avoid the need for B.D. and D.D. to spend "excessive time in daycare" and to maximize their time with Maria and Dustin. Both parties were afforded the opportunity to object to the report's admission, but neither party lodged an objection. Furthermore, the GAL was not cross-examined concerning the contents of his report. Although Maria's attorney suggested that Maria would call the GAL as a witness, the trial court advised that it "do[es] not permit the guardian ad litem to testify with the exception of cases that involve permanent custody of children in abuse, neglect, and dependency cases." (May 5 & 14, 2021 Tr. at 15-16). To this, Maria's attorney responded, "Okay." (May 5 & 14, 2021 Tr. at 16).

{¶10} At the close of the final hearing on May 14, 2021, the trial court announced its decision that B.D. and D.D. "will be educated in the Wapakoneta City School system." (May 5 & 14, 2021 Tr. at 161). The trial court explained that it had reached its decision concerning Maria and Dustin's parental rights and responsibilities, including its decision about the appropriate school district for B.D. and D.D., "after reading the guardian ad litem report again for the third or fourth time." (May 5 & 14, 2021 Tr. at 164). In addition, in its May 27, 2021 findings of fact and conclusions of law, the trial court indicated that it had considered the GAL's

recommendation in determining that B.D. and D.D. will attend the Wapakoneta school district.

{¶11} On June 4, 2021, the trial court entered its final judgment of divorce. The trial court granted Maria and Dustin a divorce from one another, adopted Maria and Dustin's agreement respecting the division of their property and debt, and implemented a modified version of Dustin's proposed shared parenting plan. The trial court also incorporated its May 27, 2021 findings of fact and conclusions of law, confirming that B.D. and D.D. would attend the Wapakoneta school district.

## II. Assignment of Error

{¶12} On July 1, 2021, Maria timely filed a notice of appeal. She raises the following assignment of error for our review:

> **The trial court erred to the prejudice of defendant-appellant by denying her the opportunity to cross examine the guardian ad litem once his report had been moved into evidence by the court. This constituted a denial of appellant's due process rights and therefore represents plain error.**

## III. Discussion

{¶13} In her assignment of error, Maria argues the trial court erred by admitting the GAL's report without allowing for cross-examination of the GAL. Maria maintains that, having been deprived of the opportunity to cross-examine the GAL, she was prevented from subjecting the GAL's school-district recommendation to meaningful scrutiny. Maria claims that had she been permitted

to cross-examine the GAL, she would have been able to challenge the GAL's recommendation by calling attention to and exploiting a number of supposed deficiencies in the GAL's report. According to Maria, in light of the trial court's apparently heavy reliance on this unexamined and allegedly deficient report, there is reason to doubt the very integrity of the underlying proceedings.

{¶14} Before allocating parental rights and responsibilities in a divorce proceeding, the trial court "may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations." R.C. 3109.04(C). The report of the investigation "shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report." *Id.*; *see* Civ.R. 75(D). "A GAL is an investigator for the court within the meaning of R.C. 3109.04(C)." *In re E.W.*, 3d Dist. Union No. 14-10-31, 2012-Ohio-308, ¶ 35.

{¶15} "Ordinarily, a GAL's report is not considered evidence, but is merely submitted as additional information for the court's consideration * * *." *In re Sherman*, 3d Dist. Hancock Nos. 5-04-47, 5-04-48 and 5-04-49, 2005-Ohio-5888, ¶ 29. However, "[t]he language of both R.C. 3109.04(C) and Civ.R. 75(D) implicitly gives the trial court the authority to admit custody investigation reports as evidence,

since they can be ordered by the court and the investigator is subject to cross examination." *Martin v. Martin*, 3d Dist. Marion No. 9-03-47, 2004-Ohio-807, ¶ 19. "'[D]ue process requires that the trial court permit each party to cross-examine a court-appointed investigator whose report the trial court considers as evidence.'" *Beaver v. Beaver*, 143 Ohio App.3d 1, 12 (4th Dist.2001), quoting *Webb v. Lane*, 4th Dist. Athens No. 99 CA 12, 2000 WL 290383, *1 (Mar. 15, 2000). "As long as the investigator is made available for cross examination, the parties' due process rights are protected, and a court may consider the report, even without oral testimony by the investigator * * *." *Martin v. Martin*, 9th Dist. Summit No. 20567, 2002 WL 388902, *4 (Mar. 13, 2002). For purposes of due process, what matters is that the parties be afforded an *opportunity* to cross-examine the investigator concerning his report. *See In re Sherman* at ¶ 30.

{¶16} In this case, where the GAL's report was admitted as evidence and considered as such, the trial court's statement that it would not permit examination of the GAL would appear to conflict with its obligations under R.C. 3109.04(C) and Civ.R. 75(D) and with the demands of due process. Nevertheless, Maria acquiesced to the trial court's position. Importantly, her attorney did not raise an objection, proffer evidence, or insist on calling the GAL as a witness. Nor did Maria's attorney object to the admission of the GAL's report once he was informed that he would not be allowed to question the GAL. Thus, as Maria herself acknowledges, our review

is limited to a plain error analysis. *See Crosby v. Crosby*, 10th Dist. Franklin No. 92AP-1455, 1993 WL 212727, *5 (June 15, 1993) (conducting plain-error review where GAL was not cross-examined concerning the contents of her report, but counsel did not object to the trial court's failure to permit cross-examination of the GAL or "raise[] the issue in any manner at trial").

{¶17} The plain-error doctrine is not favored in appeals of civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. It "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* "The doctrine implicates errors that are 'obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect [sic] on the character and public confidence in judicial proceedings.'" *Denier v. Carnes-Denier*, 12th Dist. Warren Nos. CA2016-02-012 and CA2016-04-022, 2017-Ohio-334, ¶ 26, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982).

{¶18} After reviewing the record, we conclude that the trial court's failure to allow for cross-examination of the GAL does not rise to the level of plain error. First, a trial court's failure to permit cross-examination of an investigator as required by R.C. 3109.04(C) and Civ.R. 75(D), taken alone, will not generally support a

finding of plain error. *See In re Tyas*, 12th Dist. Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 12-15 (in a permanent-custody case, rejecting an argument that "the failure to question the guardian ad litem [is] plain error in and of itself without consideration of the facts of [the] case").

{¶19} In addition, the trial court, by failing to permit cross-examination of the GAL concerning the contents of his report, did not commit an error so serious as to call into question the legitimacy of the underlying judicial process. Maria claims that cross-examination of the GAL was essential to a fair and creditable result in this case because the GAL's report "left much unanswered, unsettled, and unchallenged." She notes that the GAL's report contains no information about B.D.'s performance in Findlay-area schools during the 2020-2021 school year[1] or about the relative quality of the schools in Findlay and in Wapakoneta. She further observes that the GAL report did not set forth any information regarding whether the GAL "visited either school, or spoke with any school personnel, visited the children at the school, examined any records from either school, what discussions [the GAL] may have had with the parties as to each school, and most importantly, why the [GAL] believed it was in the best interest of the children to attend Wapakoneta schools." Maria maintains that the trial court's extensive reliance on

---

[1] During this period, D.D. attended a private preschool in Findlay.

the GAL's report, without allowing for inquiry into the report's flaws via cross-examination, undermined the basic fairness and integrity of the proceedings below.

{¶20} However, the GAL's report was not as central to the trial court's school-district decision as Maria suggests. First, the quality of one school district over the other was not the trial court's focus. Rather, the relevancy of the school district went to the amount of parenting time for the parties and the family support network available for the children when they were not in school. Next, although the trial court stated on the record that it had reviewed the GAL report three or four times, it is clear from the trial court's statement that this review related to all of its orders concerning Maria and Dustin's parental rights and responsibilities, not to its school-district decision in particular. (*See* May 5 & 14, 2021 Tr. at 164). Furthermore, as illustrated by the following excerpts from the trial court's May 27, 2021 findings of fact and conclusions of law, the GAL's report was only one data point considered by the trial court:

3. [Dustin] is a schoolteacher in Elida and [Maria] is a mental health provider in Findlay.

4. The two children were born [in May 2015 and September 2016].

5. [Dustin] filed a shared parenting plan and [Maria] did not.

6. The children's GAL recommended the adoption of [Dustin's] shared parenting plan allowing for equal time to both parents.

7. After the parties had separated, [Maria] moved herself and the children to [the] Findlay area where she had taken a new job.

8. When the parties began discussing separation, there was a belief and agreement that the children would continue to live in Wapakoneta, go to school in Wapakoneta, and that [Maria] would commute back and forth to her job in Findlay. However, [Maria] unilaterally decided to move herself and the children to Findlay, Ohio.

9. [Dustin] has more close relatives in the Wapakoneta area than [Maria] has relatives in the Findlay area. [Maria] does have relatives and a significant other in the Fostoria area.

10. Neither party presented any evidence that the Findlay school system or Wapakoneta school system was superior to the other.

11. [Dustin] presented evidence in Exhibit 4 that would show that under his plan the children would spend less time in day care and transportation time.

12. By all appearances, both parties are loving, caring parents who have been able to cooperate in doing what is best for the children under the temporary orders that were issued herein. They have been able to modify transportation schedules and times with the children to suit their needs. They also had family get-togethers with their respective extended families, which they continued to observe even though not strictly within the guidelines of local rules.

13. Shared parenting is appropriate for these parents and [the Court] finds shared parenting to be in the best interests of the children. The Court has reviewed and does adopt the best interest statutory factors as set forth in the report of the GAL. (Court's Exhibit 1)

14. The GAL has recommended that Wapakoneta be the school district of the children. [Maria] took the selfish action of removing the children from Wapakoneta where there is a much easier support system, to Findlay, where there is a smaller and not as readily available support system. The Court has found the testimony of [Dustin] to be more credible than [Maria] in that regard. The Court therefore finds that Wapakoneta Schools should be the school district of the children.

Thus, the trial court's school-district decision was informed as much, if not more so, by the trial court's weighing of the testimony and evidence presented by Maria and Dustin at the final hearing as by the GAL's report and recommendation.

{¶21} Here, it is far from clear that the trial court's school-district decision would have been different had cross-examination of the GAL diminished, or even entirely neutralized, the report's persuasive value. *See Crosby*, 1993 WL 212727, at *5 ("[T]he independent analysis and consideration which the trial court gave to the issue of child custody indicates that the court's custody decision would not have been different had the [GAL's] testimony been excluded or had defendant been permitted to cross-examine the [GAL]."). Moreover, while cross-examination of the GAL might have provided the trial court with more or better information relevant to its school-district decision, the trial court's careful and considered evaluation of all the evidence presented dispels any notion that the proceedings lacked integrity or that they were fundamentally unfair or illegitimate. Accordingly, we conclude that the trial court did not commit plain error by failing to ensure that Maria had the opportunity to cross-examine the GAL.

{¶22} Maria's assignment of error is overruled.

### IV. Conclusion

{¶23} For the foregoing reasons, Maria's assignment of error is overruled. Having found no error prejudicial to the appellant herein in the particulars assigned

Case No. 2-21-09

and argued, we affirm the judgment of the Auglaize County Court of Common Pleas, Domestic Relations Division.

**_Judgment Affirmed_**

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**